FILED
September 30, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002124651

DONALD W. FITZGERALD, State Bar No. 095348
JASON E. RIOS, State Bar No. 190086
JOAN S. HUH, State Bar No. 225724
FELDERSTEIN FITZGERALD WILLOUGHBY &
PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435

Attorneys for Steven L. Victor, Chapter 11 Trustee for
Kobra Properties, a California General Partnership

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

In re:

FOOD SERVICE MANAGEMENT,
INCORPORATED,

Debtor.

E.I.N. 68-0154870

CASE NO.: 09-40066

Chapter 11

DCN. MLG-001

Date: October 2, 2009
Time: 10:00 a.m.
Judge: Honorable Christopher M. Klein
Courtroom: 35, Department C

**EXHIBITS IN SUPPORT OF STATEMENT OF POSITION OF CHAPTER 11 TRUSTEE FOR KOBRA PROPERTIES, A CALIFORNIA GENERAL PARTNERSHIP, ON MOTION TO APPROVE USE OF CASH COLLATERAL**

| Exhibit | Description |
|---|---|
| A | A schedule showing the minimum base rent due Kobra Properties on the first of each month under the JIB Leases |
| B | Excerpts from a sample JIB Lease |
| C | Sample of Addendum entered into between Kobra Properties and JIB tenant on August 1, 2008. |
| D | Sample of Second Addendum to Lease entered into between Kobra Properties and JIB tenant on March 30, 2009 |

Dated: September 30, 2009

FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP

By: /s/ Donald W. Fitzgerald
Donald W. Fitzgerald
Attorneys for Steven L. Victor, Chapter 11 Trustee
of the Chapter 11 Estate of Kobra Properties, a
California general partnership

-1-

Exhibits in support of
Statement of Position of Ch. 11 Trustee on
Motion to Approve Use of Cash Collateral

EXHIBIT A

Kobra Properties
Monthly Jack in the Box Fixed Rent

| Entity | Tenant | Gross |
|---|---|---|
| JIB 3403 / S. Main Street | Food Service Management, Inc. | $ 10,500.00 |
| JIB 4367 / Twin Cities Road | Food Service Management, Inc. | $ 13,000.00 |
| JIB 5379 / Herndon, Fresno | Sierra Valley Restaurants | $ 15,000.00 |
| JIB 4372 / Oakhurst | Central Valley Food Services | $ 12,000.00 |
| JIB 4368 / Arby Way Anderson | Food Service Management, Inc. | $ 13,000.00 |
| JIB 585 / Rocklin Road | Food Service Management, Inc. | $ 13,091.00 |
| JIB 3401 / 3040 Sunrise Blvd | Food Service Management, Inc. | $ 10,393.00 |
| JIB 4323 / 7807 Sunrise | Food Service Management, Inc. | $ 13,000.00 |
| JIB 570 / Douglas Blvd | Food Service Management, Inc. | $ 14,398.00 |
| JIB 3435 / Stanford Ranch Road | Food Service Management, Inc. | $ 12,000.00 |
| | | $ 126,382.00 |

EXHIBIT B

# JACK IN THE BOX Anderson
# BUILD TO SUIT LEASE AGREEMENT

THIS LEASE AGREEMENT Dated December 31, 2003 between KOBRA PROPERTIES hereinafter referred to as "Landlord", and FOOD SERVICE MANAGEMENT, INC., a California Corporation DBA Jack in the Box, having an office at 2251 Douglas Blvd., Suite 120, Roseville, CA 95661, hereinafter known as "Tenant".

WITNESSETH:

1.  DEMISED PREMISES

    Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord, that certain real property situated at 2010 Arby Way, Anderson, CA, 96007, more particularly described in Exhibit "a" attached hereto and made a part hereof, thereunto pertaining. The premises hereby leased to Tenant are sometimes referred to as "demised premises". The description of the demised premises initially attached hereto may be replaced by a complete and correct legal description of the demised premises (as obtained from a boundary and topographic survey) approved by Landlord and Tenant, prior to the Term Commencement Date of this Lease.

2.  EFFECTIVE DATE

    Upon the terms and subject to the conditions set forth in this Lease Agreement, this Lease Agreement shall become effective upon the latest date of final execution by all necessary parties hereto (the "Effective Date").

3.  TERM

    The lease term shall be for a period of twenty (20) years, and shall commence at the earlier of the following events: (a) thirty (30) days after Landlord has obtained, where required, a certificate of occupancy, and has duly notified the Tenant of the completion of construction, or; (b) the date the Premises are available for operation of the Tenant's business.

4.  MINIMUM BASE RENT

Tenant shall pay minimum base rent, free from all other costs or against Landlord of any kind or agent whatsoever, to Landlord, or Landlord's duly authorized agent or representative, at an address to be designated by Landlord. The minimum base rent shall be paid in advance in monthly installments on the first of each month as follows:

1st month through 60th month of the term: $12,000.00 per month

61st month through 120th month of the term: $13,000.00 per month

121st month through 180th month of the term: $14,000.00 per month

181st month through 240th month of the term: $15,000.00 per month

If the Term Commencement Date shall fall on a day other than the first day of a Calendar month, the monthly installment shall be prorated for the months in which the commencement and the expiration of this Lease occur.

5. PERCENTAGE RENT

Tenant shall pay to Landlord as additional rent a sum equal to ten percent (10%) of Tenant's gross sales made from or upon the premises during each year. The percentage rent shall be computed each rent period. On or before the fifteenth (15th) day of the calendar month immediately following the close of each rent period, Tenant shall supply to Landlord the amount by which the sum computed as a percentage rent period exceeds the minimum monthly base rent that Tenant has paid during the percentage rent period.

The percentage rent period shall be a monthly period and shall begin the date the Lease commences. The last percentage period shall end on the date the Lease expires or terminates.

A "lease year" is a calendar year, except that the first year shall begin the date the Lease commences, and the last lease year shall end on the date the Lease expires or terminates.

"Gross sales" of Tenant means the gross selling price of all merchandise or services sold, leased, licensed, or delivered in or from the premises by Tenant, his permitted subtenants, licensees, or concessionaires, whether for cash or on credit (whether collected or not), including the gross amount received by reason of orders taken on premises

-2-

although filled elsewhere, and whether made by store personnel or vending machines. Any transaction on an installment basis; including without limitation, and "lay-away" sale or like transaction, or otherwise involving the extension of credit, shall be treated as a sale for the full price at the time of the transaction, irrespective of the time of payment or when title passes. Gross sales also shall include any sums that Tenant receives from pay telephones, stamp machines, or amusement machines.

Gross sales shall not include or if included there shall be a deducted (but only to the extent they have been included) the following:

(a) The selling price of all merchandise returned by customers and accepted for full credit, or the amount of discounts, refunds, and allowances made on such merchandise.

(b) Merchandise returned to sources or transferred to another store or warehouse owned or affiliated with Tenant.

(c) Sums and credits received in settlement of claims for loss of or damage to merchandise.

(d) The price allowed on all merchandise traded in by customers for credit or the amount of credit for discounts and allowances made instead of acceptance of merchandise.

(e) Any sums paid to third parties for the use or rental of pay telephones, stamp machines, music machines, or amusement machines.

(f) Gift certificates or similar vouchers, until such time as they have been converted into a sale by redemption.

(g) Sales and use taxes, so-called luxury taxes, consumers' excise taxes, gross receipts taxes, and other similar taxes now or in the future imposed on the sale of merchandise or services, but only if such taxes are added to the selling price, separately stated, collected separately from the selling price of merchandise or services, and collected from customers.

(h) Sales of fixtures, trade fixtures, or personal property that are not merchandise as allowed in this Lease.

Tenant shall furnish to Landlord a statement of Tenant's gross sales within fifteen (15) days after the end of each lease month. Each statement shall be signed and certified to be correct by Tenant or his authorized representative, and if Tenant is a corporation, the statement shall be signed and certified to be correct by on officer of Tenant.

Tenant shall keep at the premises full and accurate books of accounts, records, cash receipts, and other pertinent data showing his gross sales. Tenant shall install and maintain accurate receipt-printing registers and shall record on the cash registers every sale and other transactions made from the premises. Tenant shall also furnish to Landlord copies of his quarterly California sales and use tax returns at the time each is filed with the State of California. Such books of account, records, cash receipts, and other pertinent data shall be kept for a period of two (2) years after the end of each lease year. The receipt by Landlord of any statement, or any payment of percentage rent for any period, shall not bind Landlord as to the correctness of the statement or the payment.

Landlord shall be entitled during the term and within two (2) years after expiration or termination of this Lease to inspect and examine all Tenant's books of account, records, cash receipts, and other pertinent data, so Landlord can ascertain Tenant's gross sales. Tenant shall cooperate fully with Landlord in making the inspection. Landlord shall also be entitled, once during each lease year and once after expiration or termination of this lease, to an independent, audit of the Tenant's books of account, records, cash receipts, and other pertinent data to determine Tenant's gross sales, by a certified public accountant determination of gross sales and shall be conducted during usual business hours at the premises.

If the audit shows that there is a deficiency in the payment of any percentage rent, the deficiency shall become immediately due and payable. The costs of the audit shall be paid by Landlord unless an audit shows that Tenant understated gross sales by more than two percent (2%), in

-4-

which case Tenant shall pay all Landlord's costs of the audit.

Landlord shall keep all information gained from such statement, inspection, or audit confidential and shall not disclose it other than to carry out the purposes of this Lease, except that Landlord shall be permitted to divulge the contents of any statements in connection with any Financing arrangements or sale of Landlord's interest in the premises.

6. SECURITY DEPOSIT

A security deposit of Five Thousand Six Hundred Dollars ($5,600.00) shall be paid to Landlord as security for the faithful performances by Tenant of all the provisions of this Lease to be performed by Tenant. The security deposit shall not be assigned, transferred, or encumbered by Tenant, and any attempt to do so by Tenant shall not be binding upon Landlord. If, at any time during the term of this Lease, any rent shall be overdue, or should Tenant be in default of any other provision of this Lease, then Landlord may at its election (but shall not be required to) appropriate and apply any portion of the security deposit to the payment of any such overdue rent or to the costs and expanses Landlord shall incur in curing Tenant's default. Should the entire security deposit, or any portion thereof, be appropriated and applied by Landlord as herein provided, then Tenant shall immediately after receipt of written demand of Landlord, pay to Landlord a sufficient sum in cash to restore the security deposit to the original sum of the security deposit, and Tenant's failure to do so constitutes a breach of this Lease. In no event shall landlord be deemed to be a trustee of the security deposit, and Tenant shall not be entitled to interest on any sums deposited under this Section.

If Tenant shall fully and faithfully perform every provision of this Lease to be performed by Tenant, the security deposit or any balance thereof shall be returned to Tenant at the expiration of the lease term. In the event of termination of the Landlord's interest in this Lease, Landlord shall transfer said deposit to Landlord's successor in interest. After transfer, Landlord shall be relieved of any and all liability with respect to the security deposit.

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be executed as of the day and year shown opposite the respective signatures

Executed by Landlord
Date 1-18-2004

**LANDLORD:**
KOBRA PROPERTIES

*[signature: Kobra Aeyaell]*

Executed by Tenant
Date 1-17-2004

**TENANT:**
FOOD SERVICE MANAGEMENT, INC.

*[signature]*

EXHIBIT C



## ADDENDUM TO LEASE

This Addendum to Lease between **KOBRA PROPERTIES**, ("Landlord"), and Food Service Management, Inc., a California Corporation, ("Tenant"), is dated August 1, 2008.

### RECITALS

A.  Landlord and Tenant have entered into that certain Office Building Lease ("**Lease**") dated December 31, 2003, for the property located at 2010 Arby Way, Anderson, CA 96007 ("**Premises**").

B.  Landlord and Tenant now desire to amend the Lease in accordance with the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing Recitals, and the mutual covenants contained herein, the parties hereto agree as follows:

### OPERATIVE PROVISIONS

Section 4. (Minimum Base Rent). Section 4. of the lease is modified to include the following language, "Due to casual restaurant sales declining over the last twenty four (24) months, Landlord and Tenant have come to the following agreement: Beginning August 1, 2008, through February 28, 2009, Landlord has agreed to abate Base Rent for the above referenced Lease. The total rent that would have been paid from August 1, 2008, through February 28, 2009, will be amortized over a five (5) year loan to be repaid at a rate of 8% interest starting March 1, 2009. During this rent abatement period, Tenant will still be responsible for paying all expenses that affect the Premises, including Common area expenses, Utilities, Real Estate Taxes, Insurance, etc."

Ratification. Except as modified by this Addendum, the above referenced Lease is ratified, affirmed, remains in full force and effect, and is incorporated herein by this reference.

Authority. The undersigned hereby represent and warrant, each to the other, that (i) they have the legal right, power and authority to enter into this Addendum on behalf of the party for whom they are a signatory, and (ii) the execution, delivery and performance of this Addendum has been duly authorized, and (iii) no other action is requisite to the valid and binding execution, delivery and performance of the Lease as modified by this Addendum.

Counterparts. This Addendum may be executed in multiple counterparts, each of which counterpart shall be deemed an original, but all of which, together, shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Addendum as of the dates written below.

Date: August 1, 2008

Landlord:
KOBRA PROPERTIES

By: _____
Kobra Alizadeh

Date: August 1, 2008

Tenant:
FOOD SERVICES MANAGEMENT, INC., a
California Corporation

By: _____
Abe Alizadeh

Initials   Initials

EXHIBIT D



## SECOND ADDENDUM TO LEASE

This Second Addendum to Lease between **KOBRA PROPERTIES**, ("Landlord"), and Food Service Management, Inc., a California Corporation, ("Tenant"), is dated March 30, 2009.

### RECITALS

A. Landlord and Tenant have entered into that certain Office Building Lease ("**Lease**") dated December 31, 2003, for the property located at 2010 Arby Way, Anderson, CA 96007 ("**Premises**").

B. Landlord and Tenant now desire to amend the Lease and all prior Addendums in accordance with the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing Recitals, and the mutual covenants contained herein, the parties hereto agree as follows:

### OPERATIVE PROVISIONS

Section 4. (Minimum Base Rent). Section 4. of the Lease and of the Addendum to Lease dated August 1, 2008, Landlord and Tenant have agreed to reduce Base Rent by 50% from March 1, 2009 through February 28, 2010. Also, the Rent Abatement stated in the Addendum to Lease is removed in its entirety and Tenant will not be responsible for any payback to landlord. During this rent reduction period, Tenant will still be responsible for paying all expenses that affect the Premises, including Common area expenses, Utilities, Real Estate Taxes, Insurance, etc.

Ratification. Except as modified by this Second Addendum, the above referenced Lease is ratified, affirmed, remains in full force and effect, and is incorporated herein by this reference.

Authority. The undersigned hereby represent and warrant, each to the other, that (i) they have the legal right, power and authority to enter into this Addendum on behalf of the party for whom they are a signatory, and (ii) the execution, delivery and performance of this Addendum has been duly authorized, and (iii) no other action is requisite to the valid and binding execution, delivery and performance of the Lease as modified by this Addendum.

Counterparts. This Addendum may be executed in multiple counterparts, each of which counterpart shall be deemed an original, but all of which, together, shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Second Addendum as of the dates written below.

Date: March 30, 2009

Landlord:
KOBRA PROPERTIES

By: _____
Kobra Alizadeh

Date: March 30, 2009

Tenant:
FOOD SERVICES MANAGEMENT, INC., a
California Corporation

By: _____
Abe Alizadeh