2009-40066

FILED

February 09, 2010

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0002399728

**39**

WINSTON & STRAWN LLP
Richard A. Lapping (SBN: 107496)
rlapping@winston.com
David A. Honig (SBN: 160721)
dhonig@winston.com
Marcus Colabianchi (SBN: 208698)
mcolabianchi@winston.com
101 California Street
San Francisco, CA 94111-5802
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Attorneys for Trustee
BEVERLY N. MCFARLAND

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re: | **Case No. 09-40066** |
| FOOD SERVICE MANAGEMENT, INC. et al.,[1] | Chapter 11 |
| JIB Debtors. | **(Jointly Administered with Case Nos. 09-40068, 09-40212, and 09-40214)** |
| ☐ Affects Food Service Management, Inc. | DC No. WS-14 |
| ☐ Affects Kobra Associates, Inc. | Date: February 3, 2010 |
| ☐ Affects Sierra Valley Restaurants, Inc. | Time: 10:00 a.m. |
| ☐ Affects Central Valley Food Services, Inc. | Dept.: C |
| ☒ Affects All Debtors | |

**ORDER GRANTING TRUSTEE'S MOTION FOR APPROVAL OF BIDDING PROCEDURES AND FORMS OF NOTICE IN CONNECTION WITH GOING-CONCERN SALE OF SUBSTANTIALLY ALL OPERATING ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. § 363, AND RELATED ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. § 365 OR ALTERNATIVELY THROUGH A PLAN FILED BY THE TRUSTEE PURSUANT TO 11 U.S.C. § 1106(a)(5) AND § 1121**

---

[1] The Debtors in these proceedings are: Food Service Management, Inc., Kobra Associates, Inc., Sierra Valley Restaurants, Inc., and Central Valley Food Services, Inc.

RECEIVED
February 05, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002399728

Upon the motion (the "<u>Bidding Procedures Motion</u>")[1] of the Beverly N. McFarland, the Trustee (the "Trustee") appointed for above-captioned Debtors (collectively, the "<u>JIB Debtors</u>") for entry of an order (this "<u>Bidding Procedures Order</u>"):

(a) approving bidding procedures set forth below (the "<u>Bidding Procedures</u>") in connection with the going-concern sale(s), free and clear of liens, claims, encumbrances, and interests (collectively, the "<u>Sale</u>"), of substantially all of the JIB Debtors' operating assets, including the 70 Jack in the Box restaurants owned and operated by the JIB Debtors, and the Assigned Contracts (defined below) (collectively, the "<u>Assets</u>"), including authorizing and scheduling an overbid auction (the "<u>Auction</u>") in connection with the Sale;

(b) approving procedures pursuant to which the JIB Debtors may become obligated, in connection with the Trustee's entry into asset purchase agreement(s) with one or more third parties prior to the Auction, to pay a break-up fee to such third party and to provide other customary "stalking horse" overbid protections (collectively, the "<u>Stalking Horse Bidder Protections</u>"), in each case in accordance with the terms and conditions of such asset purchase agreement(s);

(c) approving procedures to determine, and the form and manner of notice with respect to, the amounts to be paid and actions to be taken to cure defaults, if any, under the executory contracts and unexpired leases to be assumed by the applicable JIB Debtors and assigned to the purchaser(s) of such JIB Debtors' assets (collectively, the "<u>Assigned Contracts</u>") in connection with the Sale; and

(d)  approving the form and manner of notices of the proposed Sale, the Bidding Procedures, the Auction, and the Sale Hearing in connection with a proposed sale pursuant to 11 U.S.C. § 363; and

(e) scheduling a hearing to consider approval of the Sale (the "<u>Sale Hearing</u>"); and after considering the remarks of counsel for parties in interest at the hearing on the Bidding Procedures Motion, and after due deliberation thereon; good and sufficient cause appearing therefore,

---

[1]  Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Bidding Procedures Motion.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

LA:259475.12

**Winston & Strawn LLP**
101 California Street
San Francisco, CA 94111-5802

**IT IS HEREBY FOUND AND DETERMINED THAT**:

1.     On September 18, 2009 (the "<u>Petition Date</u>"), each of the JIB Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "<u>Bankruptcy Code</u>").  On September 30, 2009, the Court entered an order approving the acting United States Trustee's appointment of Beverly N. McFarland as Trustee for the JIB Debtors' collective chapter 11 cases (the "<u>Cases</u>").  On October 2, 2009, the Trustee's appointment became effective upon delivering the requisite bonds to the United States Trustee.

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).  Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     In this Bidding Procedures Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

4.     Good and sufficient notice of the Bidding Procedures Motion and the relief sought therein has been given to parties in interest (including a reasonable opportunity to object or be heard regarding same), and no other or further notice is required.

5.     The Bidding Procedures are fair, reasonable, and appropriate, and are designed to maximize the value of the JIB Debtors' assets that are contemplated to be sold in accordance with such procedures.

6.     Absent the relief granted hereby with respect to the Break-up Fee and other Stalking Horse Bidder Protections, the JIB Debtors may lose the opportunity to obtain the highest and best available offer for their assets and the protections and benefits afforded by a Stalking Horse Purchase Agreement.

7.     The Trustee's proposed notice of the Sale, the Bidding Procedures, the Auction, the Stalking Horse Bidder Protections, and the Sale Hearing, all as set forth in the Bidding Procedures Motion or in this Bidding Procedures Order, or as attached hereto as <u>Exhibit 1</u>, is good, appropriate, adequate and sufficient, and is reasonably calculated to provide all interested parties with timely and proper notice thereof.

LA:259475.12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

8. The Trustee's proposed notice of the assumption and assignment of the Assigned Contracts, the Cure Costs (if any) relating thereto, and the procedures to resolve any disputed arising in connection therewith (collectively, the "Cure Cost Procedures"), substantially in the form attached hereto as Exhibit 2, is good, appropriate, adequate and sufficient, and is reasonably calculated to provide all interested parties with timely and proper notice thereof. The Cure Cost Procedures are reasonable and represent an appropriate method of determining the Cure Costs.

9. Entry of this Bidding Procedures Order is in the best interests of the JIB Debtors, their estates, their creditors and other parties in interest, as the Trustee will, among other things, retain for the benefit of the JIB Debtors' estates the prospect of a successful Sale to a Stalking Horse Bidder while enabling the Trustee to solicit competing bids.

**NOW THEREFORE, IT IS HEREBY ORDERED**:

10. The Bidding Procedures Motion is GRANTED in its entirety, and all objections, not otherwise withdrawn, are overruled.

## Bidding Procedures

11. The Bidding Procedures, as set forth below in paragraphs i through xxvi, are hereby approved in all respects:

(i) <u>Sale Process</u>. NFS will continue assisting the Trustee in identifying and contacting potential purchasers, organizing the sale process, assisting potential bidders in the conduct of due diligence, and conducting other activities designed to maximize the value of the Assets.

(ii) <u>Bidding Process</u>. The Trustee shall, in the exercise of her business judgment, with the assistance of NFS and after consultation with the entities that provided the JIB Debtors' prepetition senior secured credit facilities (collectively, the "Secured Lenders") and the Official Committee of Unsecured Creditors ("the Committee"):

(a) determine the remaining steps to be completed (including the timing in respect of such steps) for the marketing and Sale of the Assets;

(b) determine whether any person is a Qualified Bidder (as defined below);

3

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

(c)     determine whether a Qualified Bidder has made a Qualified Bid (as defined below); and

(d)     negotiate any offer set forth in a Qualified Bid (collectively, the "Bidding Process").

(iii)     Confidentiality; Qualified Bidders.  Before participating in the Bidding Process, each interested party (a "Potential Bidder") must deliver to the Trustee or her designee an executed confidentiality agreement (the "Confidentiality Agreement") in form and substance satisfactory to the Trustee.  Upon its delivery of the requisite documents and information, and upon establishing Demonstrated Ability – all as described below – such bidder shall become a "Qualified Bidder"  JIB Corporate shall be deemed a Qualified Bidder, and any bid made by JIB Corporate shall be deemed a Qualified Bid, without satisfying any of the requirements to become a Qualified Bidder or to make a Qualified Bid set forth in this Order other than those requirements specifically made applicable to JIB Corporate.

(iv)     Qualified Bid.  A letter of intent received from a Qualified Bidder will constitute a "Qualified Bid" only if such letter of intent:

(a)     is supported by all of the Qualified Bid Documents delivered on or before the Bid Deadline (each as defined below);

(b)     meets all of the Qualified Bid Requirements (as defined below); and

(c)     is accompanied by the Qualifying Deposit (as defined below).

(v)     Qualified Bid Documents and Bid Deadline.  In order to participate in the Bidding Process, each Qualified Bidder must deliver the following documents (collectively, the "Qualifying Bid Documents") to NFS[2] by no later than 12:00 noon (PST), on February 4, 2010 (the "Bid Deadline")[3]:

(a)     a written offer in the form described below, stating that: (I) such Qualified Bidder offers to purchase all, substantially all, or some portion of the Assets upon

---

[2] As promptly as practicable after receipt thereof, NFS shall transmit copies of the Qualifying Bid Documents to the Secured Lenders and the Committee.
[3] The Trustee may extend the Bid Deadline once or successively but is not obligated to do so.  If the Trustee extends the Bid Deadline, she shall promptly provide notice of the extension to the Committee, the Secured Lenders, and all parties that have shown interest in submitting a bid in accordance with the terms described herein.

4

the terms and conditions set forth in a proposed asset purchase agreement ("<u>APA</u>"), marked to show all proposed revisions to the form APA designated by the Trustee; and (II) such Qualified Bidder's offer is irrevocable and shall remain open until the closing of a Sale pursuant to a Qualified Bid;

       (b)    if the written offer provides for the purchase of more than one JIB Store, the written offer must specify the price offered for each JIB Store;

       (c)    subject to the preceding paragraph, in the event the written offer provides for the purchase of any fee (ownership) interest in real property owned by parties other than the JIB Debtors ("<u>Third-Party Real Property</u>"), the offer must separately state (1) the price offered for the Assets and (2) the price offered for such Third-Party Real Property;

       (d)    (I) the most current signed and dated audited and latest unaudited financial statements (the "<u>Financial Information</u>") of such Qualified Bidder, or (II) if the Qualified Bidder is an entity formed for the purpose of purchasing the subject Assets then: (x) the Financial Information of the equity holder(s) of the Qualified Bidder, or such other form of financial disclosure as may be required by and is acceptable to the Trustee after consultation with the Secured Lenders and the Committee; and (y) the written commitment of such equity holder(s) to be responsible for the Qualified Bidder's obligations in connection with the purchase of the subject Assets, or (III) such other documents and information acceptable to the Trustee, after consultation with the Secured Lenders and the Committee, which evidences the Qualified Bidder's ability to consummate the purchase transaction contemplated in its offer, including adequate assurance of future performance under the Assigned Contracts;

       (e)    copies of recent statements of bank accounts, CDs, stock accounts, or lines or letters of credit showing proof of adequate liquidity;

       (f)    evidence of the Qualified Bidder's ability to consummate the transaction, either in the form of existing capitalization, a commitment for financing that is subject to no conditions or contingencies other than the entry of the Bankruptcy Court's order

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

5

approving and authorizing the Trustee's sale to the Qualified Bidder, or as otherwise required by the Trustee in her sole discretion;

(g)     a written statement that such bidder is not, and will not be, a person or entity with whom the Trustee is restricted from doing business under the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, H.R. 3162, Public Law 107-56 (commonly known as the "USA Patriot Act") and Executive Order Number 13224 on Terrorism Financing, effective September 24, 2001, and regulations promulgated pursuant thereto (collectively, "Anti-Terrorism Laws"), including, without limitation, persons and entities named on the Office of Foreign Asset Control Specially Designated Nationals and Blocked Persons List. Additionally, all sources of cash will be fully disclosed to Trustee prior to the close of escrow, including any and all funds provided by a foreign national individual or entity of another country other than the United States of America;

(h)     a signed and completed Jack in the Box Franchise Application, Authorization & Release form, and such other application materials as may be requested by JIB Corporate, along with a resume of business and professional experience of the proposed franchisee, operator, equity holder(s) and officers of the Qualified Bidder;

(i)     written disclosure (the "Disclosure of Connections") of any connections, agreements, or understandings between such Qualified Bidder or its affiliates or insiders and (i) any of the JIB Debtors or their respective affiliates and insiders, (ii) the Trustee, or (iii) JIB Corporate (provided, that in addition to the foregoing Disclosure of Connections, the Qualified Bidder shall file with the Court a declaration with respect to the Disclosure of Connections, in the form attached hereto as Exhibit 3, on or before February 11, 2010; and

(j)     a statement that the Qualified Bidder's offer is irrevocable until twenty-four hours after any closing or consummation of the sale of the Assets included in the Bid to any party;

(k)     a statement regarding the proposed closing date of the transaction; and

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

(l)     any other documents that the Trustee (after consultation with the Secured Lenders and the Committee) or NFS may reasonably request.

(vi)     <u>Qualified Bid Requirements</u>.  In addition, a bid may be considered a Qualified Bid only if it satisfies the following requirements (collectively, the "<u>Qualified Bid Requirements</u>"):

(a)     such bid must demonstrate to the Trustee, in her sole discretion, that any necessary financing can be obtained within acceptable time constraints;

(b)     such bid must contemplate closing the Sale by not later than April 15, 2010 (subject to the Court's entry of an order prior to that date approving the Sale);

(c)     such bid may not be subject to confirmatory due diligence by the Qualified Bidder;

(d)     such bid must state the legal name of the Qualified Bidder and a corresponding tax identification number;

(e)     such bid must set forth and allocate the proposed consideration to be provided in exchange for any current assets of the JIB Debtors (including, without limitation, inventory, accounts receivable, prepaid expenses and deposits) that such bidder seeks to acquire;

(f)     absent consent of the Trustee, the Secured Lenders, and the Committee, the consideration payable under such bid (other than the assumption of liabilities) shall be all cash;

(g)     for each of the 69 Jack in the Box restaurants to be acquired,  such bid shall provide for the assumption and assignment of all unexpired contracts and leases applicable to each such restaurant as necessary to avoid material cross defaults in such contracts and leases; and

(h)     if such bid (other than a credit bid pursuant to Section 363(k) of the Bankruptcy Code) is on terms different than the Stalking Horse Purchase Agreement (as defined below), the bidder shall submit to the Trustee the markup described in subsection xviii below.

LA:259475.12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

(vii) <u>Demonstrated Ability</u>. Once a Potential Bidder submits the Qualifying Bid Documents and satisfies the Qualified Bid Requirements, the Trustee shall determine whether the Potential Bidder is a "<u>Qualified Bidder</u>." To make such a determination, the Trustee shall consult with, and provide copies of the Qualifying Bid Documents and other information and materials submitted by the Potential Bidder to, the affected creditors, JIB Corporate, the Committee, and other interested parties in these Cases, subject to appropriate confidentiality agreements. A Potential Bidder may qualify as a Qualified Bidder only if (a) JIB Corporate deems the Potential Bidder to be an acceptable franchisee and licensee, in the commercially reasonable exercise of its discretion based on the Qualifying Bid ("<u>JIB Corporate's Approval</u>"), pursuant to the process set forth in paragraph 11(x) below, (b) the Potential Bidder demonstrates its ability to consummate the transactions contemplated under the terms of the Qualified Bid and (c) the Potential Bidder demonstrates adequate assurance of future performance under all leases and other contracts to be assumed by the Potential Bidder in connection with the Sale contemplated thereby. After consultation with the Secured Lenders and the Committee, the Trustee may decline to recognize a Potential Bidder as a Qualified Bidder if the Trustee determines that the Potential Bidder lacks the ability to timely consummate the purchase of some or all of the Assets sought to be acquired by the Potential Bidder.

(viii) Qualified Bidder.

(a) The Trustee may take into account several subjective factors in determining, in her sole discretion, who will be a Qualified Bidder. The Trustee may approve as many or as few Qualified Bidders as she deems appropriate for an active and productive sale process. The Trustee shall also take into account the requirements or concerns of the Bankruptcy Court, JIB Corporate, the Committee, the Secured Lenders, and other parties in interest.

(b) By way of example and not limitation, the Trustee will require that, in order to be deemed a Qualified Bidder, (i) the Potential Bidder shall have the ability to pay all cash, in the form of a certified cashier's check or wire transfer, for the offer made, and (ii) if the Potential Bidder intends to obtain acquisition and/or working capital financing to fund the proposed transaction, then the Potential Bidder shall demonstrate to the Trustee that all

LA:259475.12

**Winston & Strawn LLP**
101 California Street
San Francisco, CA 94111-5802

such financing can be obtained within the time allotted in the APA and the Bidding Procedures for consummating the transaction.

(ix)    Additionally, among other considerations solely within the discretion of the Trustee, a Potential Bidder must meet the following requirements to be considered a Qualified Bidder seeking to acquire rights under any franchise agreements, license agreements and related agreements to which JIB Corporate is a party:

(a)    A minimum net worth of $1,500,000, of which at least $750,000 is liquid as a general guideline. For a small transaction there may be some flexibility, while for larger transactions the requirements will likely be much greater to be commensurate with the proposed transaction;

(b)    No more than 8 individual shareholders per buying entity;

(c)    None of the individuals involved in the acquisition may have ownership of competing brands, either in the United States or abroad, including all burger concepts & similar competitors; and

(d)    The Potential Bidder, or an operating partner with an equity interest in the acquiring partnership or entity, must have substantial fast food restaurant management experience.

(x)    Within five (5) business days after the Potential Bidder delivers the Qualifying Bid Documents, the Trustee shall notify the Potential Bidder in writing whether the Potential Bidder is a Qualified Bidder or whether the Trustee has declined to recognize a Potential Bidder as a Qualified Bidder.  The Trustee shall provide written notice to JIB Corporate, no later than 12:00 noon (PST) on February 10, 2010, of each bidder that the Trustee determines to be a Qualified Bidder.  To the extent the Trustee timely provides such notice, JIB Corporate shall provide written notice to the Trustee, the Committee, and the Secured Lenders, on or before 12:00 noon (PST) on February 15, 2010, whether each such Qualified Bidder has been granted or denied JIB Corporate's Approval.  After consultation with the Committee and the Secured Lenders, the Trustee may present to the Court on February 18, 2010, at 10:00 a.m. (PST) any unresolved dispute regarding JIB Corporate's Approval with respect to any Qualified Bidder, <u>provided</u> that the Trustee

9

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

shall give counsel for JIB Corporate at least 24 hours' notice of the Trustee's intent to so appear and contest JIB Corporate's position.

(xi)     Additional Bidder Qualifying Material by the Trustee; Qualification Disputes.

(a)     The Trustee and her financial and legal advisors (collectively, "Advisors") and the Committee  and the Secured Lenders shall be entitled to review personal information and Financial Information (collectively, "Qualifying Materials") from each Potential Bidder.  Notwithstanding any other provision herein, failure by a Potential Bidder to comply with and provide satisfactory responses to reasonable requests for Qualifying Materials shall be a basis for the Trustee to determine that a bid made by such potential bidder is not a Qualified Bid.

(b)     Any party in interest (as described in Section 1109 of the Bankruptcy Code), other than a bidder, shall have standing to challenge any Potential Bidder's compliance with the Qualified Bidder and Qualified Bid requirements, and may move the Bankruptcy Court for an order waiving any such requirements if such waiver is in the best interest of the bankruptcy estates.  No bidder shall have standing to challenge another prospective bidder's compliance with such qualification requirements or raise arguments concerning the relative value or certainty of a competing bid.  Any dispute regarding a prospective bidder's compliance with the qualification requirements shall be resolved by the Bankruptcy Court at or prior to the Auction.

(xii)     Qualifying Deposits.  Except for any credit bidder under section 363(k) of the Bankruptcy Code, all Qualified Bidders (including, without limitation, any Stalking Horse Bidder) must, in order to remain a Qualified Bidder, no later than the Qualifying Deposit Deadline (as defined below), remit a wire transfer in the amount of $10,000.00 per JIB Store to be acquired (the "Qualifying Deposit") payable to the order of the escrow agent approved by the United States Trustee (collectively, the "Escrow Agent") (provided, that the Trustee may require that the Qualifying Deposit be increased with respect to any proposed acquisition of Third-Party Real Property) to be placed in an escrow account (the "Escrow Account") pending closing of the Sale. The "Qualifying Deposit Deadline" shall be (a) the Bid Deadline or (b) such later date as may be

determined by the Trustee, upon reasonable notice to each Qualified Bidder, upon the establishment of the Escrow Account.

(xiii)    Negotiation of Stalking Horse Purchase Agreement.

(a)    At any time after all Qualified Bids have been received, the Trustee may enter into (a) one or more asset purchase agreements (each, a "Stalking Horse Purchase Agreement") with a Qualified Bidder or Bidders (each, a "Stalking Horse Bidder") with respect to all, substantially all or some portion of the Assets (a "Stalking Horse Bid").  Any and all Stalking Horse Purchase Agreements shall be subject to the approval of the Bankruptcy Court except that any Break-Up Fee and other Stalking Horse Bidder Protections (defined below) agreed to by the Trustee that conform with these Bidding Procedures, including paragraphs 12 and 13 hereof, shall be binding without further Bankruptcy Court approval.  Any Qualified Bidder seeking to be selected as a Stalking Horse Bidder must submit a bid that complies with the requirements for a Qualified Bid.

(b)    Within 24 hours after the Trustee identifies the Qualified Bidder as the Stalking Horse Bidder, she shall notify such Qualified Bidder(s) of her decision.  Within two (2) business days of such notice, each such Stalking Horse Bidder shall:  (i) increase its Qualifying Deposit to an amount equal to $20,000 per JIB Store to be acquired, paid to the order of the Escrow Agent (provided, that the Trustee may require that the Qualified Bidder further increase its deposit with respect to any proposed acquisition of Third-Party Real Property) (collectively with the Qualifying Deposit, the "Good Faith Deposit"); and (ii) deliver to the Escrow Agent documentation required to evidence such Stalking Horse Bidder's compliance with applicable Anti-Terrorism Laws in connection with the Good Faith Deposit.

(c)    Failure by a Qualified Bidder to provide the increased deposit as required above shall result in forfeiture of the Qualifying Deposit.

(d)    A Qualified Bidder that has been selected by the Trustee and has the increased Good Faith Deposit, as described above will become the "Stalking Horse Bidder," and its Bid will become the "Stalking Horse Bid," with respect to the Assets addressed by

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

such Stalking Horse Bid. The Stalking Horse Bidder will be entitled to be paid a $2,500 break-up fee (per JIB Store) if another bidder's competing bid is accepted at the Auction for such Assets described in the Stalking Horse Purchase Agreement. The break-up fee will only be paid to a Stalking Horse Bidder at the time of the closing of the Sale to the successful overbidder with respect to the Assets included in the Stalking Horse Bid. The effectiveness of any asset purchase agreement and each term thereof, other than the payment of any break-up fee(s) in accordance with the Stalking Horse Bidder Protections, is subject to the Bankruptcy Court's approval.

(xiv)  Auction Process.

(a)  The Stalking Horse Bid shall be subject to the Trustee's right to accept a superior bid made at the Auction, subject to subject to Bankruptcy Court approval and applicable Stalking Horse Bidder Protections. To the extent the Trustee receives one or more Qualified Bids in addition to the Stalking Horse Bid, the Trustee will, unless otherwise ordered by the Court, conduct an Auction with respect to the subject Assets. Such Auction will commence on a date to be determined in consultation with the Secured Lenders and the Committee and at a location to be determined by the Trustee. The time and place of the Auction shall be provided in writing to all Qualified Bidders. The Auction will be held in person; provided, however, that the Trustee reserves the right, in her sole discretion, to allow telephonic and/or video conference participation by certain bidders.

(b)  Except as otherwise ordered by the Bankruptcy Court or approved by the Trustee in her sole discretion, only Qualified Bidders, representatives of JIB Corporate, the Secured Lenders, the Committee, counterparties to Assigned Contracts to be transferred to the purchaser in connection with the proposed sale, and other persons whose attendance is expressly requested by the Trustee and her Advisors, will be entitled to attend, participate and be heard at the Auction.

(c)  The Trustee may, in her sole discretion, elect not to hold an Auction if no more than one Qualified Bid is received by the Bid Deadline.

LA:259475.12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

(xv)     Auction Overbid Protections.  The Trustee anticipates that the Stalking Horse Purchase Agreement will provide that the initial overbid of the Stalking Horse Bid (the "Initial Overbid") will be in an amount that is greater than or equal to the sum of --

(a)     the aggregate amount of (A) the purchase price set forth in the Stalking Horse Purchase Agreement, (B) the Break-up Fee (as defined below), and (C) and $25,000.00 (the "Initial Overbid Increment"); plus

(b)     the value to the JIB Debtors of the assumption of any assumed liabilities; plus

(c)     all other consideration to the JIB Debtors under the Stalking Horse Purchase Agreement; minus

(d)     all other obligations to be satisfied by the JIB Debtors only under the Stalking Horse Purchase Agreement

(collectively, the "Stalking Horse Bidder Protections").  Thereafter, each subsequent overbid (the "Subsequent Overbids" and, collectively with the Initial Overbid, each an "Overbid") shall be in increments of not less than the Overbid Increment (as defined below).

(xvi)     Bidding Increments.  Subject to the additional requirements for the Initial Overbid set forth above, each subsequent Overbid will be made in increments (the "Overbid Increment") of not less than $10,000 higher than the immediately preceding bid.  Each Overbid shall be, in the business judgment of the Trustee, on substantially the same or better terms and conditions, taken as a whole, as those set forth in the Stalking Horse Bid, calculated on the basis of total consideration to the JIB Debtors pursuant to such Overbid.

(xvii)     Further Requirements.  Any Qualified Bidder may elect to submit one or more bids at the Auction, provided that such bid satisfies the following requirements:

(a)     the bid must be on substantially the same or better terms and conditions as those set forth in the applicable Stalking Horse Purchase Agreement;

(b)     the bid must not include provisions for a break-up fee, or other provisions similar to the Stalking Horse Bidder Protections; and

(c)     the bid must otherwise satisfy the requirements of a Qualified Bid.

LA:259475.12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

(d)     The incremental value of any Overbid(s) submitted by the Stalking

Horse Bidder shall be "cash only" and shall not be deemed to include any credit with respect

to the amount of the Break-up Fee.  No person, including, without limitation, any Stalking

Horse Bidder, may object to any bid on the grounds that after deduction of the Break-up Fee,

such bid is not the highest and best bid.

(xviii)  <u>Auction Procedures</u>.  At the Auction, Qualified Bidders shall have the right to

(i) submit further bid(s) on the conditions described above, along with a markup against the Stalking

Horse Purchase Agreement, provided they participate in each round of bidding (i.e., in order to make

further bids, the Qualified Bidder must participate in each round of bidding), and (ii) at any time,

request that the Trustee announce, subject to any potential new bids, the then current highest or best

bid and, to the extent any Qualified Bidder so requests, use reasonable efforts to clarify any and all

questions the Qualified Bidder may have regarding the Trustee's announcement of the then current

highest or best bid.

(xix)   <u>Selection Criteria</u>.  Upon conclusion of the Auction, the Trustee shall review

the Qualified Bid(s) on the basis of, among other things, the following: (a) the amount of the

Qualified Bid(s); (b) the form of the proposed transaction (i.e. any improvement in the terms set

forth in the Stalking Horse Purchase Agreement); (c) the number, type and nature of any changes to

the Stalking Horse Purchase Agreement; (d) the extent to which such modifications are likely to

delay closing of the Sale and the cost to the JIB Debtors of such modifications or delay; (e) the

likelihood of the bidder's ability to close a transaction and the timing thereof; (f) the extent that the

Qualified Bidder demonstrates adequate assurance of future performance under all leases and other

contracts to be assumed; (g) the net value provided to the JIB Debtors, taking into account the

Stalking Horse Bidder Protections, and such other aspects of the Qualified Bids as determined by the

Trustee.  The Trustee may reject any Qualified Bid that the Trustee, after consultation with the

Secured Lenders and the Committee, determines to be: (A) inadequate or insufficient; (B) not in

conformity with the requirements of applicable law or these Bidding Procedures; or (C) contrary to

the best interest of the JIB Debtors, their estates and their creditors.  The Trustee will, in her sole

LA:259475.12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

discretion, select the highest or otherwise best bid(s) with respect to the Assets addressed thereby (each a "Successful Bid") in the exercise of her business judgment.

    (xx)   Notice to JIB Corporate. JIB Corporate has asserted that under its prepetition agreements with the JIB Debtors, JIB Corporate holds a right of first refusal (a "ROFR") that would allow JIB Corporate to match any offer for the Assets. The Trustee has not conceded the validity or enforceability of the asserted ROFR. However, immediately upon selecting the Successful Bid(s), the Trustee shall provide notice of the terms of such Successful Bid(s) to counsel to JIB Corporate by communication in open court, facsimile transmission, email, or personal delivery to JIB Corporate or its counsel at the Auction. JIB Corporate shall attend the Auction through counsel and shall have a period of one hour from the time of such notice by the Trustee to match any Successful Bid, on exactly the same terms upon which such Successful Bid was made, by equivalent notice to the Trustee or NFS (each a "JIB Match Notice"). To the extent JIB Corporate fails to provide a timely JIB Match Notice with respect to a Successful Bid within this period, JIB Corporate shall be deemed to have forever waived and relinquished any ROFR on the Assets to which such Successful Bid relates. To the extent JIB Corporate provides a timely JIB Match Notice with respect to a Successful Bid, JIB Corporate shall execute an asset purchase agreement reflecting the terms of its matching bid (a "Match Asset Purchase Agreement"), shall provide a Successful Bidder Deposit pursuant to the terms of paragraph 11 (xxi) of this Order, and shall be subject to the requirements and obligations of Successful Bidders set forth below, and the Match Asset Purchase Agreement shall be subject to Bankruptcy Court approval. If at any time the Trustee or the Court permits a bidder to submit a higher or better offer, then the Trustee or the Court shall promptly provide counsel for JIB Corporate with actual notice thereof, and JIB Corporate shall be entitled to a reasonably equivalent period to match any such higher or better offer on the terms and conditions of the preceding sentence.

    (xxi)  Designation of Successful Bidder; Additional Deposits.

    (a)   Within two (2) business days of being declared the maker of a Successful Bid (the "Successful Bidder"), the Successful Bidder shall increase its Qualifying Deposit or Good Faith Deposit, as the case may be, to an amount equal to (a) the greater of

LA:259475.12

five percent (5%) of the aggregate purchase price proposed in its Successful Bid, or (b) $25,000.00 per JIB Store to be acquired, paid to the order of the Escrow Agent (provided, that the Trustee may require that the Successful Bidder further increase its deposit with respect to any proposed acquisition of Third-Party Real Property (collectively with the Qualifying Deposit and the Good Faith Deposit, if any, the "Successful Bidder Deposit").

(b)     Failure by a Successful Bidder to provide the increased Successful Bidder Deposit as required above shall result in forfeiture of all previous Qualifying and Good Faith Deposits.

(c)     Upon receipt of a Successful Bidder Deposit, the Trustee shall file with the Court a copy of such Successful Bidder's Purchase Agreement for final approval at the Sale Hearing; provided, that at the Trustee's election, the Trustee may file a plan pursuant to 11 U.S.C. § 1121 et seq. that incorporates approval of the Sale.

(d)     The Closing of the transactions contemplated by the final asset purchase agreement shall occur no later than fifteen (15) calendar days after Bankruptcy Court approval, unless extended in writing by the Trustee.

(xxii)  Return of Qualifying and Good Faith Deposits.

(a)     All Qualifying and Good Faith Deposits described above shall be retained by the Trustee, and all Qualified Bids will remain open, notwithstanding the Bankruptcy Court's approval of a sale pursuant to the terms of a final asset purchase agreement to a Successful Bidder, until two (2) business days after the closing of the transaction to the Successful Bidder, but in any event not later than thirty (30) calendar days after the Sale Hearing without the consent of the relevant Qualified Bidder(s).  However, the Trustee will authorize the Escrow Agent to return to the bidder from which it was received each of such bidder's Qualifying and Good Faith Deposits within eight (8) business days after the Auction if the Trustee, in her sole discretion, determines that a Qualified Bid is not viable as a back up bid.

(b)     The Successful Bidder Deposit shall be non-refundable if the Bankruptcy Court approves the sale of Assets to the Successful Bidder pursuant to the terms

LA:259475.12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

of the Successful Bidder's final asset purchase agreement, regardless of whether the Successful Bidder closes the transaction. In the event the Bankruptcy Court approves the sale but the Successful Bidder fails to close the transaction, the Successful Bidder Deposit shall be non-refundable and retained by the Trustee free and clear of any claims or interests of the Successful Bidder.

(xxiii) <u>Backup Bids and Related Matters</u>. In the event a declared Successful Bidder fails to timely perform any of its obligations as set forth above or pursuant to the Bankruptcy Court-approved definitive agreements executed by such Successful Bidder:

(a) The declared Successful Bidder shall forfeit all deposits made to the Escrow Account without regard to the JIB Debtors' ultimate damages occasioned by such failure; such deposits shall be applied to the JIB Debtors' damages, if any, and shall not constitute liquidated damages; and, notwithstanding the foregoing, the Trustee, the JIB Debtors and the bankruptcy estates shall retain all other rights, remedies, claims, counterclaims, and defenses, including the right to seek equitable or injunctive relief.

(b) One or more backup bidders (including, without limitation, the Stalking Horse Bidder) (each, a "<u>Back-up Bidder</u>" and its bid a "<u>Back-Up Bid</u>") with respect to any Assets shall keep its final and highest bid open pending the closing of the transaction incorporating the declared Successful Bid with respect to such Assets, and its deposit shall remain in the Escrow Account. Upon the Closing (as defined in the relevant APA) of the transaction represented by the declared Successful Bid, the deposit(s) of the Back-up Bidders shall be returned. In the event that such Closing has not occurred by the earlier of April 15, 2010 or two business days after the Closing Date (as defined in the relevant APA), the Trustee shall select a Back-up Bidder for such assets whose bid, subject to the terms of subparagraph (c) below, shall be declared the Successful Bid without further order of the Bankruptcy Court, and such bidder shall be required to effect the Closing of the transaction contemplated in its bid by the earlier of April 21, 2010 or five (5) calendar days after being declared the Successful Back-up Bidder. Any such Successful Back-up Bidder who fails to timely perform shall forfeit all deposits made without regard to the JIB Debtors' ultimate

LA:259475.12

damages occasioned by such failure; such deposits shall be applied to the JIB Debtors' damages, if any, and shall not constitute liquidated damages; and, notwithstanding the foregoing, the Trustee, the JIB Debtors and the bankruptcy estates shall retain all other rights, remedies, claims, counterclaims, and defenses, including the right to seek equitable or injunctive relief.

(c)     Immediately upon selecting the Successful Back-up Bidder, the Trustee shall provide notice thereof to counsel to JIB Corporate by communication in open court, facsimile transmission, or email. JIB Corporate shall have a period of twenty four (24) hours from the time of such notice to match any Successful Back-up Bid on exactly the same terms upon which such Successful Back-up Bid was made. To the extent JIB Corporate fails to match a Successful Back-up Bid within this period, JIB Corporate shall be deemed to have forever waived and relinquished any ROFR on the Assets to which such Successful Back-up Bid relates. To the extent JIB Corporate matches a Successful Back-up Bid, it shall be subject to the requirements and obligations of Successful Bidders except that its matching bid shall not be subject to further Bankruptcy Court approval. In the event that the Closing Date of such matching bid occurs on or after April 16, 2010, as a condition of exercising its matching bid, JIB Corporate shall be deemed to have consented to any required extension of the Trustee's time to assume and assign unexpired leases under section 365(d)(4) of the Bankruptcy Code to which JIB Corporate is the counterparty, and shall obtain the consent of any other applicable lessor with respect to any other unexpired leases subject to its matching bid, or bear the risk of any failure to obtain such consent.

(d)     The Trustee, after consultation with the Secured Lenders and the Committee, may grant any declared Successful Bidder additional time to perform and, to the extent necessary, extend the Closing Date; provided, however, that any extension beyond ten (10) calendar days shall be pursuant to an order of the Bankruptcy Court.

(xxiv)  Addition to and/or Modification of Bidding Procedures. The Trustee shall have the right to adopt such other rules for the Bidding Process as, in the Trustee's business judgment after consultation with the Secured Lenders and the Committee, will better promote the

18

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

goals of the Bidding Process and which are not inconsistent with any of the provisions of these Bidding Procedures, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable order of the Bankruptcy Court.

(xxv) <u>Communications to Secured Lenders; Credit Bids</u>. The Secured Lenders and the Committee shall be provided with copies of all material communications between bidders and the Trustee (including professionals and other representatives of all such parties) with respect to bids on the Assets. The Bidding Procedures shall be without prejudice to the rights of the Secured Lenders to make credit bid(s) pursuant to Section 363(k) of the Bankruptcy Code, in combination with or without a non-credit bid. In the event that a Sale to the Secured Lenders is consummated pursuant to a credit bid, any applicable Break-Up Fee shall be payable just as with any other bidder.

(xxvi) <u>Cash Collateral</u>. Trustee may use the cash collateral of the Secured Lenders for the payment of any Break-Up Fee, subject to each affected Secured Lender's approval of the Stalking Horse Bid that provides for such payment.

**<u>Stalking Horse Bidder Protections</u>**

12. In the event a Stalking Horse Bidder is not the Successful Bidder with respect to the Assets addressed by its Stalking Horse Bid, the Stalking Horse Bidder shall be entitled to receive from the JIB Debtors' bankruptcy estates, upon the consummation of a transaction with respect to such Assets by such other Successful Bidder, a cash payment of $2,500 per store or real estate property included in such Stalking Horse Bid (the "<u>Break-Up Fee</u>"); <u>provided</u>, that no Break-Up Fee shall be payable to the Stalking Horse Bidder if it overbids an Initial Overbid, or breaches its obligations under its Stalking Horse Bid without having its performance excused under the terms thereof.

13. Promptly upon execution of any Stalking Horse Purchase Agreement, the Trustee shall file a copy of such Stalking Horse Purchase Agreement with the Court. To the extent that any proposed Stalking Horse Bidder Protections embodied in such Stalking Horse Purchase Agreement materially differ from the Stalking Horse Bidder Protections set forth above, the Trustee shall provide interested parties with written notice clearly setting forth the terms of such proposed Stalking Horse Bidder Protections, and shall seek this Court's expedited approval thereof. Unless a

LA:259475.12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Secured Lender files and serves an objection upon the Trustee, the Committee, and the applicable Stalking Horse Bidder(s) within three (3) business days of such notice, each such Secured Lender will be deemed to have consented to the Stalking Horse Bidder Protections set forth therein, and shall be deemed to have consented to the use of the Secured Lenders' cash collateral for the payment of any Break-Up Fee and expense reimbursements contemplated thereby pursuant to the terms thereof.

### The Sale Hearing

14.     A Sale Hearing to approve the proposed Sale to the Stalking Horse Bidder or, alternatively, the transaction that is the subject of the Successful Bid to the Successful Bidder shall be conducted on March 17, 2010, or such later time as is determined by the Court; <u>provided</u>, that the Court may conduct a hearing on provisional approval of the Sale at the conclusion of the Auction.

### Notice of Auction and Proposed Sale

15.     On or before February 8, 2010, the Trustee will cause the Notice of Auction and Sale, substantially in the form attached hereto as <u>Exhibit 1</u> (the "<u>Auction and Sale Notice</u>"), to be sent by first-class mail, postage-prepaid, to: (a) counsel to the Committee; (b) all entities that, to the knowledge of the Trustee, claim any interest in or lien on the Assets; (c) all parties to potential Assigned Contracts (to the extent they have then been identified); (d) all governmental taxing authorities that have, or as a result of the Sale of the Assets may have, claims, contingent or otherwise, against the JIB Debtors; (e) all parties that have filed requests for notice under Bankruptcy Rules 2002 and/or 9010(b); (f) the Office of the United States Trustee; and (g) to the extent practicable, all entities that have, within the past 12 months, expressed to the JIB Debtors or the Trustee an interest in purchasing the Assets.

### Objection to Relief Sought at Sale Hearing

16.     Any objections to the relief sought at the Sale Hearing must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the Local Rules of Practice for the United States Bankruptcy Court, Eastern District of California (the "<u>Local Bankruptcy Rules</u>"); (c) be filed with the Clerk of the Bankruptcy Court; and (d) be served so as to be received no later than March 3, 2010 (the "<u>Sale and Assignment Objection Deadline</u>") on:

20

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

(a) counsel to the Trustee; (b) counsel to the Committee; (c) counsel to the Secured Lenders; and (d) the Office of the United States Trustee. The failure of any person to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the consummation of the Sale of the Assets, including the transfer of the Assets free and clear of any and all liens, claims, interests, and encumbrances (other than permitted encumbrances provided for expressly in the Stalking Horse Purchase Agreement or such other purchase agreement as may be entered into with the Successful Bidder).

17. The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of such adjournment before the Court or on the Court's calendar on the date scheduled for the hearing.

### Assumption and Assignment of Assigned Contracts and Cure Costs Procedures

18. The Trustee is authorized and directed to serve, via first class mail, a notice (the "Cure Amount Notice"), in substantially the form attached hereto as Exhibit 2, on or before February 17, 2010, on each Counterparty to a potential Assigned Contract.

19. The Trustee will attach to the Cure Amount Notice her calculation of the undisputed cure amounts that she believes must be paid to cure all defaults, if any, under each Assigned Contract (the "Cure Costs"). If no amount or "$0" is listed on the Cure Amount Notice, the Trustee believes that there is no Cure Cost with respect to such Assigned Contract.

20. Unless the Counterparty to an Assigned Contract, on or before the Sales and Assignment Objection Deadline, files an objection (each a "Cure Amount Objection") with respect to its scheduled Cure Cost, and serves such objection on: (a) counsel to the Trustee; (b) counsel to the Committee; (c) counsel to the Secured Lenders; and (d) the Office of the United States Trustee, then (i) the Trustee may assume and assign such Assigned Contract to the Stalking Horse Bidder or the Successful Bidder, as applicable, (ii) such Counterparty shall be forever barred from objecting to the Cure Cost and from asserting any additional cure or other amounts with respect to such Assigned Contract, (iii) the Trustee shall be entitled to rely solely on the Cure Cost; and (iv) such Counterparty shall be forever barred and estopped from asserting or claiming against the Trustee, the JIB Debtors, the Secured Lenders, the Stalking Horse Bidder, or any other Successful Bidder or assignee of the

21

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

relevant Assigned Contract, that any additional amounts are due or defaults exist under such Assigned Contract. Each Cure Amount Objection must also set forth (x) the basis for the objection, (y) the amount the Counterparty asserts as the Cure Cost and the basis therefore, with specificity, and (z) documentation in support of the Counterparty's alternative calculation of the Cure Cost.

21.     In addition, Counterparties to any Assigned Contract must file and serve on the parties identified in paragraph 20 above, on or before the Sale and Assignment Objection Deadline, any objections to the adequate assurance of future performance under the Assigned Contract (if and as assumed).

22.     Hearings on Cure Amount Objections, and on any objections to the adequate assurance of future performance under Assigned Contracts, may be held (a) at the Sale Hearing, or (b) on such other date that the Trustee determines in her sole discretion or the Court directs; provided, however, that if the subject Assigned Contract is assumed and assigned, the Cure Cost asserted by the objecting party (or such lower amount as may be fixed by this Court) shall be deposited and held in a segregated account by the Trustee pending further order of this Court or mutual agreement of the Trustee, the Successful Bidder, and the objecting Counterparty.

23.     Notwithstanding any other provision of this Bidding Procedures Order, if the Stalking Horse Bidder is not the Successful Bidder, and such Successful Bidder seeks to have certain Assigned Contracts assumed or assigned as part of an alternative transaction, then (a) the Trustee will provide Financial Information for the Successful Bidder to all Counterparties to such Assigned Contracts immediately following the Auction via facsimile, Federal Express, or email, and (b) such Counterparties must file and serve on the parties identified in paragraph 21 above any objections to the adequate assurance of future performance under such Assigned Contract (if and as assumed) as soon as practicable.

24.     The Trustee's decision to assume and assign the Assigned Contracts shall be subject to Court approval and consummation of the Sale. Absent consummation of the Sale, each of the Assigned Contracts shall neither be deemed assumed nor assigned, and shall in all respects be subject to further administration under the Bankruptcy Code.

LA:259475.12

25.     Except to the extent otherwise provided in the Stalking Horse Purchase Agreement or such other purchase agreement as may be entered into with a Successful Bidder, subject to any prepetition cure payments, the assignee of any Assigned Contract will not be subject to any liability to the relevant Counterparty of such Assigned Contract that accrued or arose before the closing date of the Sale, and the JIB Debtors shall be relieved of all liability accruing or arising thereafter pursuant to section 365(k) of the Bankruptcy Code.

### Additional Provisions

26.     The stay imposed by Bankruptcy Rules 6004(h) and 6006(d), if applicable, is waived such that this Bidding Procedures Order shall be effective and enforceable immediately upon entry.

27.     The Trustee may extend the deadlines set forth in the Bidding Procedures, may adjourn the Auction at the Auction, may extend the time for filing objections to the Sale, and/or may seek adjournment of the Sale Hearing in open court, all without further notice.

28.     The Court reserves the power to enter a subsequent order authorizing the Trustee to sell the Assets free and clear of all liens pursuant to Bankruptcy Code § 363(f).

29.     Notwithstanding any other provision hereof, no payment authorized hereby or contemplated herein shall be made to any party without a further order of this Court authorizing such payment by amount and payee, except that the Escrow Agent, when and if authorized by the Trustee pursuant to the terms of this Order, may return to the bidder from which it was received, and only such bidder, each of such bidder's Qualifying and Good Faith Deposits.

30.     Service of the notices described herein on the parties entitled to receive such notices pursuant to this Bidding Procedures Order shall constitute proper, timely, adequate and sufficient notice thereof and satisfies the requirements of sections 105, 363, and 365 of the Bankruptcy Code, Rules 2002, 6004, 7004, 9006, 9008, and 9014 of the Bankruptcy Rules, and no other or further notice is or shall be required.

Dated: February 09, 2010

United States Bankruptcy Judge

Approved as to form:

/s/ Marc Cohen
Marc Cohen, Esq.
Kaye Scholer LLP
Attorneys for the Official Committee of
Unsecured Creditors


/s/ Alan G. Tippie
Alan G. Tippie, Esq.
Sulmeyer Kupetz
Attorneys for City National Bank


/s/ John R. Clemency
John R. Clemency, Esq.
Gallagher & Kennedy, P.A.
Attorneys for National Bank of Arizona


/s/ Peter Duncan
Peter Duncan, Esq.
Pyle Sims Duncan & Peterson,
  A Professional Corporation
Attorneys for Jack in the Box Inc.

LA:259475.12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

**Exhibit 1**

*(Attached)*

LA:259475.12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

In re:

FOOD SERVICE
MANAGEMENT, INC. et al.,[1]

JIB Debtors.

☐ Affects Food Service Management, Inc.

☐ Affects Kobra Associates, Inc.

☐ Affects Sierra Valley Restaurants, Inc.

☐ Affects Central Valley Food Services, Inc.

☒ Affects All Debtors

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 09-40066

Chapter 11

(Jointly Administered with
Case Nos. 09-40068, 09-40212, and
09-40214)

Auction Date:     February 23, 2010
Objection Deadline: March 3, 2010
Sale Hearing Date:  March 17, 2010

## NOTICE OF AUCTION AND SALE

**THIS NOTICE DESCRIBES A BANKRUPTCY SALE AND AUCTION THAT MAY AFFECT THE LEGAL RIGHTS OF CREDITORS AND CUSTOMERS OF FOOD SERVICE MANAGEMENT, INC., SIERRA VALLEY RESTAURANTS, INC., CENTRAL VALLEY FOOD SERVICES, INC., AND KOBRA ASSOCIATES, INC**

## (PLEASE READ IT CAREFULLY)

**PLEASE TAKE NOTICE** that, on December 30, 2009, Beverly N. McFarland, in her capacity as chapter 11 trustee (the "Trustee") for Food Service Management, Inc., Sierra Valley Restaurants, Inc., Central Valley Food Services, Inc., and Kobra Associates, Inc. (collectively, the "JIB Debtors") filed a motion for entry of an order pursuant to §§ 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):

     (a) approving bidding procedures (the "Bidding Procedures") in connection with the going-concern sale(s), free and clear of liens, claims, encumbrances, and interests (collectively, the "Sale"),[2] of substantially all of the JIB Debtors' operating assets, including the 70 Jack in the Box restaurants owned and operated by the JIB Debtors, and the Assigned Contracts (defined below) (collectively, the "Assets"), including authorizing and scheduling an overbid auction (the "Auction") in connection with the Sale;

     (b) approving procedures pursuant to which the JIB Debtors may become obligated, in connection with the Trustee's entry into asset purchase agreement(s) with one or more third parties prior to the Auction, to pay a break-up fee to such third party and to provide

---

[1] The Debtors in these proceedings are: Food Service Management, Inc., Kobra Associates, Inc., Sierra Valley Restaurants, Inc., and Central Valley Food Services, Inc.

[2] There may be more than a single Sale of the Assets. The Trustee reserves the right to conduct additional Sales consistent with the procedures ordered by the Court.

LA:259489.5

other customary "stalking horse" overbid protections (collectively, the "<u>Stalking Horse Bidder Protections</u>"), in each case in accordance with the terms and conditions of such asset purchase agreement(s);

(c) approving procedures to determine, and the form and manner of notice with respect to, the amounts to be paid and actions to be taken to cure defaults, if any, under the executory contracts and unexpired leases to be assumed by the applicable JIB Debtors and assigned to the purchaser(s) of such JIB Debtors' assets (collectively, the "<u>Assigned Contracts</u>") in connection with the Sale; and

(d) approving the form and manner of notices of the proposed Sale, the Bidding Procedures, the Auction, and the Sale Hearing ; and

(e) scheduling a hearing to consider approval of the Sale (the "Sale Hearing").

On February _, 2010, the Bankruptcy Court entered an order (the "<u>Bidding Procedures Order</u>")[3] approving the Bidding Procedures which, among other things, established procedures for the submission of bids, the holding of an Auction and scheduling a Sale Hearing regarding the Sale of substantially all of the JIB Debtors' Assets.

**PLEASE TAKE FURTHER NOTICE** that, an Auction with respect to the sale of substantially all of the JIB Debtors' Assets conducted by National Franchise Sales (telephone: 949-428-0480) will commence at **9:00 a.m. Pacific Time, on February 23, 2010, at Citizen Hotel, 926 J Street (at 10th), Sacramento, California**, or as may be otherwise ordered by the Court and of which the Trustee shall notify all Qualified Bidders and other persons entitled to receive notice thereof under the Bidding Procedures. The Auction may continue from time to time, and the date, time and place may be changed by the Chapter 11 Trustee with notice given at the Auction to all persons present at the Auction. At the Auction, Qualified Bidders may submit higher and better offers, at the conclusion of which, the Trustee will designate the Successful Bidder(s) for final approval at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that after the Auction, the Trustee will file a motion for an order approving the going concern sale of substantially all operating assets pursuant to 11 U.S.C. § 363 (the "Sale Motion"). The statutory basis for the sale and the Sale Motion is 11 U.S.C. § 363, including but not limited to the following sub-sections: (b), (d), (f), (h), (i) (j), (k), (l) and (m), and 11 U.S.C. § 365. **If the Sale Motion is approved by the Bankruptcy Court, the Trustee, under 11 U.S.C. §§ 363(f), may sell the JIB Debtors' Assets free and clear of any claim, lien, encumbrance and interest in the Assets.**

**PLEASE TAKE FURTHER NOTICE** that the Court will hold the Sale Hearing to consider approval of the Sale, the Sale Motion, and any related motions on **March 17, 2010 at 10:00 a.m.**, Pacific Time at the U.S. Bankruptcy Court, 501 I Street, Sacramento, California, Courtroom 35.

**If you seek to object to the sale of the Assets or any portion thereof, you must comply with the terms for making such objections set forth in the Bidding Procedures Order, including the filing of such objections with the Court.** If you fail to timely file an objection on or before <u>**March 3, 2010**</u>, you shall be barred from asserting, at the Sale Hearing or thereafter, any objection to the Sale or the Trustee's assumption and assignment of any Assigned Contract or the consummation of the Sale and performance under the Stalking Horse Purchase Agreement (if any) or any other alternative agreement entered into with the Successful Bidder, including the transfer of the Assets free and clear of interests and encumbrances (other than permitted interests and encumbrances specifically provided for therein).

---

[3] All capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Bidding Procedures Order.

2

By scheduling the Auction and Sale Hearing pursuant to the Bidding Procedures Order, the Trustee intends to complete the Sale of substantially all of the JIB Debtors' operating assets, to the party with the highest and best bid for such assets, in order to maximize the value of such assets for creditors of the JIB Debtors' estates. The proceeds of such Sale may be available for the administration of the JIB Debtors' bankruptcy cases and payment to creditors of the JIB Debtors' estates, subject to the provisions of the title 11 of the United States Code, the Federal Rules of Bankruptcy Procedures, and the guidelines and rules of procedure applicable to these cases. Upon completion of the Sale, the proceeds from the Sale will be held for distribution. The proceeds of such Sale, however, may not satisfy the total amount of secured claims and thus, there may be no distribution to unsecured or other creditors or interest holders.

**ALL CREDITORS AND/OR INTEREST HOLDERS RECEIVING THIS NOTICE SHOULD REVIEW THE BIDDING PROCEDURES ORDER AND CONSULT THEIR OWN LEGAL COUNSEL AND/OR ACCOUNTANT(S) AS TO LEGAL, TAX, AND OTHER MATTERS CONCERNING THEIR CLAIMS OR INTERESTS IN THESE CASES AND THE EFFECT, IF ANY, WHICH THE SALE WILL HAVE UPON THEM.**

Copies of all related documents are available upon written request to the Chapter 11 Trustee at the following address:

Winston & Strawn LLP
ATTN: Marcus O. Colabianchi
101 California Street, 39th Floor
San Francisco, CA 94111-5802
telephone: (415) 591-1000

Dated: February 8, 2010                    WINSTON & STRAWN LLP


By:  /s/ Richard A. Lapping
     Richard A. Lapping
     Attorneys for Chapter 11 Trustee
     BEVERLY N. MCFARLAND

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

3

LA:259489.5

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

**Exhibit 2**

*(Attached)*

LA:259475.12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 09-40066 |
| | ) | |
| FOOD SERVICE | ) | Chapter 11 |
| MANAGEMENT, INC. et al.,[1] | ) | |
| | ) | (Jointly Administered with |
| JIB Debtors. | ) | Case Nos. 09-40068, 09-40212, and |
| | ) | 09-40214) |
| ☐ Affects Food Service Management, Inc. | ) | |
| | ) | |
| ☐ Affects Kobra Associates, Inc. | ) | |
| | ) | Objection Deadline: March 3, 2010 |
| ☐ Affects Sierra Valley Restaurants, Inc. | ) | Hearing Date: March 17, 2010 |
| | ) | |
| ☐ Affects Central Valley Food Services, Inc. | ) | |
| | ) | |
| ☒ Affects All Debtors | ) | |

## NOTICE OF CURE AMOUNTS FOR POSSIBLE ASSUMPTION, SALE, AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS AND SALE HEARING

**PLEASE TAKE NOTICE** that, on December 30, 2009, Beverly N. McFarland, in her capacity as chapter 11 trustee (the "Trustee") for Food Service Management, Inc., Sierra Valley Restaurants, Inc., Central Valley Food Services, Inc., and Kobra Associates, Inc. (collectively, the "JIB Debtors") filed a motion for entry of an order pursuant to §§ 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):

(a) approving bidding procedures (the "Bidding Procedures") in connection with the going-concern sale(s), free and clear of liens, claims, encumbrances, and interests (collectively, the "Sale"),[2] of substantially all of the JIB Debtors' operating assets, including the 69 Jack in the Box restaurants owned and operated by the JIB Debtors, and the Assigned Contracts (defined below) (collectively, the "Assets"), including authorizing and scheduling an overbid auction (the "Auction") in connection with the Sale;

(b) approving procedures pursuant to which the JIB Debtors may become obligated, in connection with the Trustee's entry into asset purchase agreement(s) with one or more third parties prior to the Auction, to pay a break-up fee to such third party and to provide other customary "stalking horse" overbid protections (collectively, the "Stalking Horse Bidder Protections"), in each case in accordance with the terms and conditions of such asset purchase agreement(s);

(c) approving procedures to determine, and the form and manner of notice with

---

[1] The Debtors in these proceedings are: Food Service Management, Inc., Kobra Associates, Inc., Sierra Valley Restaurants, Inc., and Central Valley Food Services, Inc.
[2] There may be more than a single Sale of the Assets. The Trustee reserves the right to conduct additional Sales consistent with the procedures ordered by the Court.

1

respect to, the amounts to be paid and actions to be taken to cure defaults, if any, under the executory contracts and unexpired leases to be assumed by the applicable JIB Debtors and assigned to the purchaser(s) of such JIB Debtors' assets (collectively, the "Assigned Contracts") in connection with the Sale; and

(d) approving the form and manner of notices of the proposed Sale, the Bidding Procedures, the Auction, and the Sale Hearing; and

(e) scheduling a hearing to consider approval of the Sale (the "Sale Hearing").

**PLEASE TAKE FURTHER NOTICE** that, on February __, 2010, the Bankruptcy Court entered an order (the "Bidding Procedures Order") approving the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures, the Trustee has held an Auction with respect to the subject Assets. At the Auction, the Trustee designated the Successful Bidder(s) for final approval at the Sale Hearing. You may obtain information on the Successful Bidder(s) and the Financial Information for each by contacting Marcus O. Colabianchi, Esq., at Winston & Strawn LLP, 101 California Street, 39th Floor, San Francisco, California 101 California 94111-5802, telephone no. (415) 591-1000.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has scheduled the Sale Hearing to consider the Sale to the Successful Bidder(s) on **March 17, 2010 at 10:00 a.m.**, **Pacific Time.**

**PLEASE TAKE FURTHER NOTICE** that at the Sale Hearing or as soon thereafter as the matter may be heard, the Bankruptcy Court will consider whether to enter an order approving the Sale of the JIB Debtors' Assets.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures Order and section 363(f) of the Bankruptcy Code, the Trustee may assume, sell and assign certain of the JIB Debtors' unexpired leases, license agreements, and executory contracts (collectively, the "Assigned Contracts") free and clear of all liens, claims, encumbrances, and interests upon satisfaction of the cure amounts required under section 365(b)(1)(A) of the Bankruptcy Code (the "Cure Costs"). The Assigned Contracts that the Trustee may seek to assume, sell, and assign and corresponding Cure Costs are listed on the attached Exhibit B. A hearing on the Assumption Motion is scheduled for the same time and place as the Sale Hearing – **March 17, 2010 at 10:00 a.m.**, **Pacific Time** at the U.S. Bankruptcy Court, 501 I Street, Sacramento, California, Courtroom 35.

**PLEASE TAKE FURTHER NOTICE** that _unless_ the non-debtor party (each, a "Counterparty") to an Assigned Contract files an objection (each a "Cure Amount Objection") with respect to its scheduled Cure Cost, on or before [date], and serves such objection on the following parties named and at the addresses listed on Exhibit A:

(a)    counsel to the Trustee;
(b)    counsel to the Committee,
(c)    counsel to each of the secured claimants; and
(d)    the Office of the United States Trustee,

_then_

(i)    the Trustee may assume and assign such Assigned Contract to the Stalking Horse Bidder or the Successful Bidder, as applicable,
(ii)   such Counterparty shall be forever barred from objecting to the Cure Cost and from asserting any additional cure or other amounts with respect to such Assigned Contract,
(iii)  the Trustee shall be entitled to rely solely on the Cure Cost; and

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

(iv)     such Counterparty shall be forever barred and estopped from asserting or claiming against the Trustee, JIB Debtors, the secured claimants, the Stalking Horse Bidder, or any other Successful Bidder or assignee of the relevant Assigned Contract, that any additional amounts are due or defaults exist under such Assigned Contract.

Each Cure Amount Objection must also set forth:

(x)     the basis for the objection,
(y)     the amount the Counterparty asserts as the Cure Cost and the basis therefor, with specificity, and
(z)     documentation in support of the Counterparty's alternative calculation of the Cure Cost.

PLEASE TAKE FURTHER NOTICE that Counterparties to any Assigned Contract must file and serve on the parties identified above, on or before *[date]*, any objections to the adequate assurance of future performance under the Assigned Contract (if and as assumed).

Notwithstanding any other provision of the Bidding Procedures Order, if the Successful Bidder(s) is not approved by the Court or fails to close the Sale, and another party, such as a back-up bidder, replaces the Successful Bidder(s) and seeks to have certain Assigned Contracts assumed or assigned as part of an alternative transaction, then (a) the Trustee will provide Financial Information for that party to all Counterparties to such Assigned Contracts immediately following such replacement via facsimile, Federal Express, or email, and (b) such Counterparties must file and serve on the parties identified above any objections to the adequate assurance of future performance under such Assigned Contract (if and as assumed) as soon as practicable.

PLEASE TAKE FURTHER NOTICE that hearings on Cure Amount Objections, and on any objections to the adequate assurance of future performance under Assigned Contracts, may be held (a) at the Sale Hearing, or (b) on such other date that the Trustee determines in her sole discretion or the Court directs; provided, however, that if the subject Assigned Contract is assumed and assigned, the Cure Cost asserted by the objecting party (or such lower amount as may be fixed by this Court) shall be deposited and held in a segregated account by the Trustee pending further order of this Court or mutual agreement of the Trustee, the Successful Bidder, and the objecting Counterparty.

PLEASE TAKE FURTHER NOTICE that the Trustee's decision to assume and assign the Assigned Contracts shall be subject to Court approval and consummation of the Sale. Absent consummation of the Sale, each of the Assigned Contracts shall neither be deemed assumed nor assigned, and shall in all respects be subject to further administration under the Bankruptcy Code.

Dated: February 12, 2010                    WINSTON & STRAWN LLP


                                           By:  /s/ Richard A. Lapping
                                                Richard A. Lapping
                                                Attorneys for Chapter 11 Trustee
                                                BEVERLY N. MCFARLAND

3

LA:259497.4

Exhibit A

*(Names and Addresses of Parties to be Served With*

*Cure Amount Objections)*

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA 94111-5802**

LA:259497.4

Exhibit B

*(List of Contracts to be Assumed/Assigned)*

*(to be added at later date)*

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA 94111-5802**

**Winston & Strawn LLP**
101 California Street
San Francisco, CA 94111-5802

## Exhibit 3

*(Attached)*

LA:259475.12

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| In re: | ) Case No. 09-40066 |
| | ) |
| FOOD SERVICE MANAGEMENT, | ) Chapter 11 |
| INC. et al.,[1] | ) |
| | ) (Jointly Administered with |
| JIB Debtors. | ) Case Nos. 09-40068, 09-40212, and |
| | ) 09-40214) |
| ☐ Affects Food Service Management, Inc. | ) |
| | ) |
| ☐ Affects Kobra Associates, Inc. | ) |
| | ) |
| ☐ Affects Sierra Valley Restaurants, Inc. | ) |
| | ) |
| ☐ Affects Central Valley Food Services, Inc. | ) |
| | ) |
| ☒ Affects All Debtors | ) |

## DECLARATION OF [NAME] IN SUPPORT OF QUALIFIED BID OF [*ENTITY*]

STATE OF [*STATE*]     )
                   )
COUNTY OF [*COUNTY*]     )

    I, [*NAME*], hereby declare (the "Declaration") as follows:

    1.    This Declaration is submitted pursuant to the Order Granting Trustee's Motion for Approval of Bidding Procedures and Forms of Notice in Connection with Going-Concern Sale of Substantially All Operating Assets Free and Clear of Liens, Claims, Encumbrances, and Interest Pursuant to 11 U.S.C. § 363, and Related Assumption and Assignment of Executory Contracts Pursuant to 11 U.S.C. § 365 or Alternatively Through a Plan Filed by the Trustee Pursuant to 11 U.S.C. § 1106(a)(5) and § 1121 (the "Bidding Procedures Order"), and in support of the consideration of [*ENTITY*] ("Bidder") as a "Qualified Bidder," as defined in the Bidding Procedures Order, for the assets of Food Service Management, Inc. , a California corporation,

---

[1] The Debtors in these proceedings are: Food Service Management, Inc., Kobra Associates, Inc., Sierra Valley Restaurants, Inc., and Central Valley Food Services, Inc.

1

Kobra Associates, Inc. a California corporation, Sierra Valley Restaurants, Inc., a California corporation,  and/or Central Valley Food Services, Inc., a California corporation (collectively, the "Debtors").

2.      Attached hereto as Exhibit A is a list of all known past and present connections, agreements, and/or understandings between (a) Bidder and any of its past or present "affiliates" or "insiders," as each such term is defined in 11 U.S.C. § 101, and (b) (i) any of the Debtors and any of their respective past or present affiliates or insiders, (ii) Beverly N. McFarland, Chapter 11 Trustee, or (iii) JIB Corporate (as defined in the Bidding Procedures Order).

3.      Bidder is conducting ongoing inquiries regarding the connections, agreements, and/or understandings described above. Upon conclusion of those inquiries or at any time subsequent hereto, if Bidder should discover any fact bearing on the matters described herein, Bidder will supplement the information contained in this Declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing information is true and correct.

Executed at _____ on [*Date*], 2010

_____
                              [*NAME*]
                              [*TITLE*]

# EXHIBIT A

*[Listing of connections, agreements, and/or understandings]*

SF:273244.2