FILED
February 17, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002423543

**23**

WINSTON & STRAWN LLP
Richard A. Lapping (SBN: 107496)
rlapping@winston.com
David A. Honig (SBN: 160721)
dhonig@winston.com
Marcus Colabianchi (SBN: 208698)
mcolabianchi@winston.com
101 California Street
San Francisco, CA 94111-5802
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Attorneys for Chapter 11 Trustee
BEVERLY N. MCFARLAND

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>FOOD SERVICE MANAGEMENT, INC. et al.,[1]<br><br>Debtors.<br><br>☐ Affects Food Service Management, Inc.<br>☐ Affects Kobra Associates, Inc.<br>☐ Affects Sierra Valley Restaurants, Inc.<br>☐ Affects Central Valley Food Services, Inc.<br>☒ Affects All Debtors | **Case No. 09-40066**<br><br>Chapter 11<br><br>**(Jointly Administered with Case Nos. 09-40068, 09-40212, and 09-40214)**<br><br>DC No. WS-17<br><br>Date: March 17, 2010<br>Time: 10:00 a.m.<br>Dept.: C |

## CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING GOING CONCERN SALE OF SUBSTANTIALLY ALL OPERATING ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. § 363

[1] The Debtors in these proceedings are: Food Service Management, Inc., Kobra Associates, Inc., Sierra Valley Restaurants, Inc., and Central Valley Food Services, Inc.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | JURISDICTION | | 2 |
| II. | BACKGROUND | | 3 |
| | A. | The Debtors' Bankruptcy Filing and Appointment of the Chapter 11 Trustee | 3 |
| | B. | The Debtors' Business | 3 |
| | C. | National Franchise Sales' Employment and the Sale Process | 3 |
| | D. | Bidding Procedures, Qualified Bids, and Selection of Stalking Horse Buyers | 4 |
| | | i. NOR-CAL VENTURE GROUP, INC | 5 |
| | | ii. TBS FOODS, INC. | 7 |
| | | iii. RV FOODS, INC. | 8 |
| | | iv. REMAINING STORES – OFFERED AT AUCTION | 8 |
| | | v. STORES CLOSED | 8 |
| | E. | The Purchase Agreement | 8 |
| | F. | The Auction | 9 |
| III. | RELIEF REQUESTED | | 9 |
| IV. | PROPOSED SALE | | 9 |
| | A. | Summary of Proposed Sale | 9 |
| | B. | Additional Information | 10 |
| | | i. Asset Valuation | 11 |
| | | ii. Relationship to Buyer | 11 |
| V. | DISCUSSION | | 11 |
| | A. | The Sale Should be Approved as Fair, Reasonable and in the Best Interests of Creditors and the Bankruptcy Estates | 11 |
| | | i. Valid Business Justification and Good Business Reason. | 12 |
| | | ii. The Sale is the Result of Good Faith Negotiations. | 14 |
| | | iii. The Purchase Price is Fair and Reasonable. | 15 |
| | B. | The Sale Satisfies the Requirements of Bankruptcy Code Section 363(f) for the Sale of the Estate's Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests | 15 |

C. Section 363(b)(1) of the Bankruptcy Code, As It Relates to the Sale of Personally Identifiable Information, is Not Applicable ....... 16

D. Accurate and Reasonable Notice Has Been Provided ....... 17

E. Waiver of Federal Rule of Bankruptcy Procedure 6004(h) ....... 17

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

240 North Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 North Brand Partners, Ltd.), 200 B.R. 653 (9th Cir. B.A.P. 1996)........................12

Arnold & Baker Farms v. U.S., 85 F.3d 1415 (9th Cir. 1996)........................15

Community Thrift & Loan v. Suchy (In re Suchy), 786 F.2d 900 (9th Cir. 1985)........................14

Fearing v. Seror (In re Fearing), 143 Fed. Appx. 744 (9th Cir. 2005)........................12

In re Abbotts Dairies, 788 F.2d 143 (3rd Cir. 1986)........................12, 14, 15

In re Apex Oil Co., 92 B.R. 847 (Bankr. E.D. Mo. 1988)........................14

In re Curlew Valley Assocs., 14 B.R. 506 (Bankr. D. Utah 1981)........................13

In re Gulf States Steel, Inc., 285 B.R. 497 (Bankr. N.D. Ala. 2002)........................13, 15

In re Lionel Corp., 722 F.2d 1063 (2nd Cir. 1983)........................11, 12

In re M Capital Corp., 290 B.R. 743 (B.A.P. 9th Cir. 2003)........................14

In re Quintex Entertainment, Inc., et al, 950 F.2d 1492 (9th Cir. 1991)........................11

In re Southern Biotech, Inc., 37 B.R. 318 (Bankr. M.D. Fla. 1983)........................13

In re Wilde Horse Enterprises, Inc., 136 B.R. 830 (Bankr. C.D.Cal. 1991)........................12

Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.), 780 F.2d 1223 (5th Cir. 1986)........................12

Thomas v. Namba (In re Thomas), 287 B.R. 782 (B.A.P. 9th Cir. 2002)........................14

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Travelers Ins. Co. v. Plaza Family Partnership (In re Plaza Family Partnership), 95 B.R. 166 (Bankr. E.D. Cal 1989) ....................12

Walters v. Sunwest Bank (In re Walters), 83 B.R. 14 (B.A.P. 9th Cir. 1988) ....................12, 13

**STATUTES**

11 U.S.C. § 105(a) ....................1, 2

11 U.S.C. § 363 .................... passim

11 U.S.C. § 363(b) ....................11, 12

11 U.S.C. § 363(b)(1) ....................16

11 U.S.C. § 363(f) ....................15, 18

11 U.S.C. § 363(f)(2) of the Bankruptcy Code ....................16

11 U.S.C. § 363(f)(4) ....................16

11 U.S.C. § 363(m) ....................14, 18

11 U.S.C. §§ 1101 et seq. ....................13

28 U.S.C. § 157 ....................2

28 U.S.C. § 157(b)(2) ....................2

28 U.S.C. § 1334 ....................2

28 U.S.C. § 1408 ....................2

28 U.S.C. § 1409 ....................2

Cal. Comm. Code § 9301 ....................16

U.C.C. § 9-301 ....................16

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 6004 ....................1, 2, 11

Fed. R. Bankr. P. 6004(f)(1) ....................11

Fed. R. Bankr. P. 6004(h) ....................9, 17, 18

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Beverly N. McFarland, in her capacity as the duly appointed and acting chapter 11 trustee (the "Trustee") of Food Service Management, Inc., Sierra Valley Restaurants, Inc., Central Valley Foods Services, Inc., and Kobra Associates, Inc. (collectively, the "Debtors"), hereby moves ("Sale Motion") this Court pursuant to sections 105(a) and 363 ("Section 363") of title 11 of the United States Code, as amended (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order approving the sale (the "Sale") of substantially all of the Debtors' assets free and clear of liens, claims, encumbrances, and interests (the "Assets").

When she was appointed as trustee over the Debtors, the Trustee took over the control of 70 stores. Since, the franchisor obtained relief from stay relating to one store (Store No. 515), and the Trustee will surrender that store to the franchisor soon. There are now 69 stores that remain. As of the date of the Sale Motion, the Trustee has identified three parties as stalking horse buyers, which are Nor-Cal Venture Group, Inc., TBS Foods, Inc., and RV Foods, Inc. (collectively, the "Stalking Horse Buyers"). The Trustee has negotiated three separate Asset Purchase Agreement (the "Purchase Agreements")[1] with the Stalking Horse Buyers. The terms of the Purchase Agreements are nearly identical and have been made public to all Qualified Bidders. The sales to the Stalking Horse Buyers are subject to overbid. The chart below indicates the numbers of stores each of the Stalking Horse Buyers is purchasing:

| **Stalking Horse Buyers** | **No. of Debtors' Stores** |
|---|---|
| Nor-Cal Venture Group, Inc. | 38 |
| TBS Foods, Inc. | 21 |
| RV Foods, Inc. | 2 |
| **Total** | **61** |

Of the 8 remaining Debtors' store locations, the Trustee anticipates that 5 of them will be part of the February 23, 2010 auction (the "Auction") and a buyer(s) will be identified at that

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Purchase Agreement. A form of the Purchase Agreement is filed concurrently herewith as Exhibit A.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

time. As such, the Trustee does, and will seek approval of those sales under this Sale Motion.[2] The Trustee has closed the remaining 3 stores.[3]

Through this Sale Motion, the Trustee seeks approval of the Sale of the 61 Debtors' stores to the Stalking Horse Buyers, and to the highest bidder(s) for the 5 Debtors' stores at the conclusion of the Auction. Alternatively, the Trustee seeks approval of the sale for each of the 66 stores to the highest and best bidder(s) following the Auction and a hearing on the Sale Motion. The ultimate successful purchaser(s) after the conclusion of the Auction and Sale Hearing, which may include the Stalking Horse Buyers, are collectively referred to hereinafter as the "Buyer".[4]

This Sale Motion is based on the memorandum of point and authorities below, the declarations of Beverly McFarland (the "McFarland Declaration"), and Allan Gallup (the "Gallup Declaration") filed concurrently herewith, the other pleadings and papers on file in these cases, and such other evidence and argument as may be submitted orally or in writing to the Court at or before the hearing (the "Sale Hearing") on the Sale Motion. In further support hereof, the Trustee respectfully represents as follows:

## I.

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004.

[2] The Trustee will promptly supplement this Sale Motion with additional information after the Auction.

[3] On or about February 14, 2010, the Trustee closed stores nos. 3401, 4311, and 4316.

[4] To the extent the Buyer for anyone of the stores is a different party to that of the Stalking Horse Buyers, the Trustee will expect that the buyer enter into a Purchase Agreement substantially similar to the Purchase Agreements the Stalking Horse Buyers agreed to. This also applies to the potential buyer(s) of the 5 remaining stores.

## II.

## BACKGROUND

### A. The Debtors' Bankruptcy Filing and Appointment of the Chapter 11 Trustee

2. On September 18, 2009 each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On September 30, 2009, the Court entered an order approving the acting United States Trustee's appointment of Beverly N. McFarland as Chapter 11 trustee for the Debtors' collective chapter 11 cases (the "Cases"). On October 2, 2009, the Trustee's appointment became effective upon her delivery of the requisite bonds to the United States Trustee.

3. On or about December 8, 2009, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors in the Debtors' cases [Docket No. 216].

### B. The Debtors' Business

4. The Debtors own 70 Jack in the Box stores (collectively, "JIB Stores") throughout Central and Northern California, which they operate under franchise agreements with Jack in the Box, Inc. ("JIB Corporate"). With over 1,800 employees, the Debtors operate the JIB Stores through multiple real property leases, franchise agreements with JIB Corporate, and food, equipment, repair, service, and supply contracts and other relationships with vendors and lenders. The Debtors' business is a complex, cash-intensive operating business, with an average of approximately $7 million in aggregate cash receipts per month.

### C. National Franchise Sales' Employment and the Sale Process

5. The Trustee retained National Franchise Sales, Inc. ("National Franchise Sales") as her franchise restaurant marketing, sale and financial advisor. National Franchise Sales has become the industry leader in franchise business brokerage by successfully assisting franchisees and franchisors in the acquisition and sales of their businesses, since 1978. National Franchise Sales has facilitated numerous transactions ranging from the sale of a single-unit franchise to multi-unit sales involving over 100 units. Additionally, National Franchise Sales assists in the asset recovery of non- or under-performing franchise businesses in bankruptcy, receivership, foreclosure, or default.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

6. Since being retained herein, National Franchise Sales has been actively engaged in identifying and contacting potential purchasers, organizing the Sale process, assisting potential bidders in the conduct of due diligence, and conducting other activities designed to maximize the value of the Assets. National Franchise Sales commenced its marketing effort at the end of November shortly after its appointment as the Trustee's Financial Advisor was approved. That marketing effort consisted in general of the following:

- Web Advertising on sites with combined total of 1.25 Million Members
- Direct Email Marketing to 14,000 Buyers and Industry Professionals
- Direct Fax Marketing to 5,500 Buyers & Industry Professionals
- Direct Mail to 5,000 Buyers
- Print Advertising in Periodicals with total circulation of 1.1 Million+
- Press Release to 80 Industry Editors & Writers

7. The marketing efforts resulted in over 125 executed Confidentiality Agreements, following which approximately 80 potential bidders have undertaken due diligence since before the holidays. For due diligence, National Franchise Sales has obtained and made available over a thousand documents assembled in an electronic data room. Forty nine of the potential bidders have supplied material in a comprehensive effort to become a Qualified Bidder, and nearly half of these have been or are being scheduled for interviews with senior management at JIB Corporate's headquarters in San Diego, California.

**D. Bidding Procedures, Qualified Bids, and Selection of Stalking Horse Buyers**

8. On or about December 30, 2009, the Trustee filed the motion for approval of bidding procedures and forms of notice in connection with the going-concern sale of substantially all operating assets of the Debtors free and clear of liens, claims, encumbrances, and interests pursuant to 11 U.S.C. § 363 (the "Sale Procedures Motion").

9. The Court originally heard the Sale Procedures Motion on January 14, 2010 and then again on February 3, 2010. At the February 3, 2010 hearing, the Court granted the motion and the Order of this Court was entered February 9, 2010 [Docket No. 438] (the "Sale Procedures Order").

10. The Sale Procedures Order was developed consistent with the objective of promoting active bidding that will result in the highest and best offer the marketplace can sustain for the Property. Among other things, the Sale Procedures Order contemplates the execution of an asset purchase agreement between the Trustee and a stalking horse buyer to govern the sale of substantially all of the Debtors' assets.

11. Pursuant to the Sale Procedures Order, the Qualified Bid deadline was 12:00 PM (PST) on Thursday, February 4, 2010. National Franchise Sales received a total of 48 timely bids from a total of 38 bidding entities for various combinations of stores. This resulted in over 150,000 potential bid permutations.

12. After careful and considerable review of all of the Qualified Bids, the Trustee recommended and adopted three, non-overlapping bids, in combination, as the collective Stalking Horse Buyers. As mentioned above, these bids cover a total of 61 stores at a combined offering price of $27,063,283. The following charts provide the Debtors store and purchase price for each of the Stalking Horse Buyers' bids:

**i. NOR-CAL VENTURE GROUP, INC**

| Store Number | Address | Owner | Price |
|---|---|---|---|
| 446 | 500 Broadway<br>Chico, CA 95928 | Kobra Associates, Inc. | $38,684.00 |
| 467 | 337 G Street<br>Davis, CA 95616 | Kobra Associates, Inc. | $ 388,684.00 |
| 489 | 6131 Greenback Lane<br>Citrus Heights, CA 95621 | Kobra Associates, Inc. | $ 378684.00 |
| 512 | 1200 E. Main Street<br>Woodland, CA 95776 | Kobra Associates, Inc. | $ 26,184.00 |
| 513 | 6729 Skyway<br>Paradise, CA 95969 | Kobra Associates, Inc. | $ 393,684.00 |
| 518 | 13751 Mono Way<br>Sonora, CA 95370 | Central Valley Food Services, Incorporated | $ 527,684.00 |
| 532 | 4849 Madison Avenue<br>Sacramento, CA 95841 | Kobra Associates, Inc. | $ 204,684.00 |
| 546 | 1111 Colusa Avenue<br>Yuba City, CA 95991 | Kobra Associates, Inc. | $ 210,684.00 |
| 548 | 2293 Arden Way<br>Sacramento, CA 95825 | Kobra Associates, Inc. | $ 33,684.00 |
| 549 | 2542 The Esplanade<br>Chico, CA 95973 | Kobra Associates, Inc. | $ 73,684.00 |
| 570 | 1923 Douglas Boulevard<br>Roseville, CA 95661 | Food Services Management, Incorporated | $ 763,684.00 |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

| Store Number | Address | Owner | Price |
|---|---|---|---|
| 583 | 11801 Nevada City Highway Grass Valley, CA 95945 | Food Services Management, Incorporated | $ 823,684.00 |
| 585 | 4410 Rocklin Road Rocklin, CA 95677 | Food Services Management, Incorporated | $ 226684.00 |
| 587 | 1130 Leisure Town Rd. Vacaville, CA 95677 | Kobra Associates, Inc. | $ 48,684.00 |
| 593 | 2560 W. El Camino Avenue Sacramento, CA 95833 | Kobra Associates, Inc. | $ 423,684.00 |
| 594 | 7795 Stockton Boulevard Sacramento, CA 95823 | Kobra Associates, Inc. | $ 28,684.00 |
| 3403 | 1075 South Main Street Red Bluff, CA 96080 | Food Services Management, Incorporated | $733,684.00 |
| 3406 | 1045 Dana Drive Redding, CA 96003 | Food Services Management, Incorporated | $26,184.00 |
| 3426 | 8655 Auburn Boulevard Roseville, CA 95661 | Food Services Management, Incorporated | $ 523,684.00 |
| 3435 | 6691 Stanford Ranch Road Rocklin, CA 95677 | Food Services Management, Incorporated | $ 523,684.00 |
| 3436 | 9179 Elk Grove Florin Road Elk Grove, CA 95624 | Food Services Management, Incorporated | $ 773,684.00 |
| 3438 | 4820 Laguna Boulevard Elk Grove, CA 95758 | Food Services Management, Incorporated | $ 773,684.00 |
| 3454 | 150 Dorset Drive Dixon, CA 96520 | Kobra Associates, Inc. | $ 693,684.00 |
| 3457 | 2010 East Main Street Woodland, CA 95776 | Kobra Associates, Inc. | $ 133,098.00 |
| 3465 | 3970 County Road 89 Dunnigan, CA 95967 | Kobra Associates, Inc. | $ 83,684.00 |
| 3475 | 220 Nut Tree Parkway Vacaville, CA 95687 | Kobra Associates, Inc. | $ 205,684.00 |
| 3486 | 4085 Railroad Avenue Redding, CA 96001 | Kobra Associates, Inc. | $173,684.00 |
| 3489 | 3098 Highway 99 W Corning, CA 96021 | Kobra Associates, Inc. | $48,684.00 |
| 4313 | 455 Hwy 65 Lincoln, CA 95648 | Kobra Associates, Inc. | $ 153,684.00 |
| 4323 | 7807 Sunrise Boulevard Citrus Heights, CA 95610 | Food Services Management, Incorporated | $ 323,684.00 |
| 4329 | 4435 Florin Road Sacramento, CA 95823 | Kobra Associates, Inc. | $ 373,684.00 |
| 4330 | 4300 Madison Sacramento, CA 95842 | Kobra Associates, Inc. | $ 191,684.00 |
| 4336 | 11222 Old Mill Lane Martell, CA 95654 | Kobra Associates, Inc. | $ 48,684.00 |
| 4350 | 1955 20th Street Chico, CA 95928 | Kobra Associates, Inc. | $ 428,684.00 |
| 4359 | 1030 Tharp Road Yuba City, CA 95993 | Kobra Associates, Inc. | $ 88,684.00 |
| 4361 | 800 E. Cypress Avenue Redding, CA 96002 | Food Services Management, Incorporated | $ 428,684.00 |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

| Store Number | Address | Owner | Price |
|---|---|---|---|
| 4367 | 10390 Twin Cities<br>Galt, CA 95632 | Food Services Management, Incorporated | $ 773,684.00 |
| 4368 | 2010 Arby Way<br>Anderson, CA 96007 | Food Services Management, Incorporated | $ 648,684.00 |

### ii. TBS FOODS, INC.

| Store Number | Address | Owner | Price |
|---|---|---|---|
| 441 | 2124 North Blackstone Highway<br>Fresno, CA 93703 | Central Valley Food Services, Incorporated | $285,123.00 |
| 465 | 595 W. Olive Avenue<br>Merced, CA 95348 | Central Valley Food Services, Incorporated | $1,397,123.00 |
| 507 | 3025 East Shaw Avenue<br>Fresno, CA 93710 | Central Valley Food Services, Incorporated | $621,123.00 |
| 509 | 3110 East Tulare<br>Fresno, CA 93702 | Central Valley Food Services, Incorporated | $1,708,123.00 |
| 519 | 1300 Jensen Ave<br>Sanger, CA 93657 | Central Valley Food Services, Incorporated | $817,123.00 |
| 524 | 945 Wolftrap<br>Madera, CA 93637 | Central Valley Food Services, Incorporated | $1,980,123.00 |
| 526 | 2195 W. Shaw<br>Fresno, CA 93711 | Central Valley Food Services, Incorporated | $120,123.00 |
| 538 | 6720 North Blackstone<br>Fresno, CA 93710 | Central Valley Food Services, Incorporated | $653,123.00 |
| 580 | 1270 V Street<br>Merced, CA 95340 | Central Valley Food Services, Incorporated | $814,123.00 |
| 582 | 4968 East Kings Canyon<br>Fresno, CA 93727 | Central Valley Food Services, Incorporated | $256,123.00 |
| 589 | 1898 Bellvue Road<br>Atwater, CA 95301 | Central Valley Food Services, Incorporated | $917,123.00 |
| 3222 | 1132 Clovis Avenue<br>Clovis, CA 93612 | Sierra Valley Restaurants, Inc. | $126,123.00 |
| 3294 | 3085 E. Central Avenue<br>Fresno, CA 93725 | Sierra Valley Restaurants, Inc. | $502,123.00 |
| 3295 | 8008 N. Cedar Avenue<br>Fresno, CA 93720 | Sierra Valley Restaurants, Inc. | $181,123.00 |
| 3367 | 4085 N. Golden State Boulevard<br>Fresno, CA 93722 | Central Valley Food Services, Incorporated | $840,123.00 |
| 3398 | 1167 N. Clovis<br>Fresno, CA 93727 | Central Valley Food Services, Incorporated | $800,123.00 |
| 3399 | 18158 Avenue 24<br>Chowchilla, CA 93610 | Central Valley Food Services, Incorporated | $110,123.00 |
| 3530 | 3058 W. Clinton Avenue<br>Fresno, CA 93722 | Sierra Valley Restaurants, Inc. | $505,417.00 |
| 3541 | 28692 Ave 12<br>Madera, CA 93637 | Central Valley Food Services, Incorporated | $793,123.00 |
| 3567 | 1680 Herndon Avenue<br>Clovis, CA 93611 | Central Valley Food Services, Incorporated | $199,123.00 |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

| Store Number | Address | Owner | Price |
|---|---|---|---|
| 4351 | 400 Joseph Gallo Court<br>Livingston, CA 95334 | Sierra Valley Restaurants, Inc. | $392,123.00 |

**iii. RV FOODS, INC.**

| Store Number | Address | Owner | Price |
|---|---|---|---|
| 4317 | 1620 Broadway<br>Eureka, CA 95501 | Kobra Associates, Inc. | $225,000.00 |
| 4327 | 1233 6th Street<br>Crescent City, CA 95531 | Kobra Associates, Inc. | $75,000.00 |

13. The Trustee anticipates that the 5 additional stores not part of the Stalking Horse Buyers' purchases will also be offered at the Auction. The 5 additional stores are set forth in the chart below:

**iv. REMAINING STORES – OFFERED AT AUCTION**

| Store Number | Address | Owner |
|---|---|---|
| 471 | 13421 Lincoln Way<br>Auburn, CA 95603 | Kobra Associates, Inc. |
| 475 | 290 East Monte Vista Ave.<br>Vacaville, CA 95688 | Kobra Associates, Inc. |
| 535 | 2680 Grass Valley Hwy.<br>Auburn, CA 95603 | Kobra Associates, Inc. |
| 4372 | 40070 Hwy 49<br>Oakhurst, CA 93644 | Central Valley Food Services, Inc. |
| 5379 | 6759 N. Milburn<br>Fresno, CA 93722 | Sierra Valley Restaurants, Inc. |

14. As noted above, the Trustee exercised her business judgment and recently closed the following 3 stores:

**v. STORES CLOSED**

| | | |
|---|---|---|
| 3401 | 3040 Sunrise Blvd.<br>Rancho Cordova, CA 95670 | Food Service Management, Inc. |
| 4311 | 500 Natoma Station Dr.<br>Folsom, CA 95630 | Kobra Associates, Inc. |
| 4316 | 8530 Auburn Folsom Rd.<br>Granite Bay, CA 95746 | Kobra Associates, Inc. |

**E. The Purchase Agreement**

15. Each of the Stalking Horse Buyers and the Trustee negotiated three separate Purchase Agreements. As of the date of this Sale Motion, the parties need to sign the Purchase

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Agreements in its final form, which the Trustee anticipates occurring prior to the Auction. The Trustee will promptly supplement her motion papers with signed copies of the Purchase Agreements.

16. The Purchase Agreements provide the terms of the Sale, subject to overbid and Court approval. The Sale is conditioned upon the assumption and assignment of certain executory contracts and unexpired leases of the Debtors and certain related parties (the "Assumed Contracts"). Additional details regarding the Assumed Contracts are set forth in the separate Assumption Motion (filed herewith) that is scheduled for hearing on the same date and time as this Sale Motion.

**F. The Auction**

17. On February 23, 2010, at Citizen Hotel, 926 J Street (at 10th), Sacramento, California, National Franchise Sales will conduct the Auction. At the Auction, the Sale of the Assets to the Stalking Horse Buyers is subject to overbid. Moreover, and as indicated above, the 8 stores that are not being purchased by the Stalking Horse Buyers, 5 will be offered at the Auction and 3 have already been closed by the Trustee.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

## III.

## RELIEF REQUESTED

18. The Trustee requests approval of the Sale of the Assets to the Buyer (defined above as the ultimate successful purchaser of the Assets) pursuant to the terms and conditions set forth in the Purchase Agreements. The Trustee further requests that the Sale be free and clear of liens, claims, encumbrances and other interests, as provided in the Purchase Agreements, with any such liens, claims, encumbrances or interests attaching to the proceeds of the Sale. The Trustee also requests that the provisions of Bankruptcy Rule 6004(h), which would otherwise stay the order granting this motion until the expiration of fourteen (14) days after entry thereof, be waived.

## IV.

## PROPOSED SALE

**A. Summary of Proposed Sale**

19. The following is a general description of the key points contained in the Purchase Agreements by and between Stalking Horse Buyers and the Trustee. As noted above, to

the extent the Buyer (defined as the ultimate successful buyer of the Assets) is a different party than that of the Stalking Horse Buyers, the Trustee expects that the Buyer enter into a Purchase Agreement substantially similar to the Purchase Agreements the Stalking Horse Buyers have agreed to. Essentially, the Purchase Agreements contain the terms of the Sale. Although the Purchase Agreements contain most identical provisions and terms, there are differences. It is recommended that all parties review the Purchase Agreements to gain a full and complete understanding of its contents.[5]

- Stalking Horse Buyer will purchase substantially all of the Debtors' assets, free and clear of liens, claims, encumbrances and other interests, with the exception of certain "Excluded Assets" as defined in the Purchase Agreements.
- The purchase price is a cash payment subject to certain adjustments.
- Stalking Horse Buyer will assume certain liabilities as provided by the Purchase Agreements. These include (i) all liabilities arising out of, incurred in connection with or related to the ownership of the Property (as defined in the Purchase Agreements) to the extent arising from acts taken or omissions made from and after the Closing Date (as defined in the Purchase Agreements) or related to the period from and after the Closing Date, and (ii) those liabilities described on the applicable exhibit to the Purchase Agreements.
- It is anticipated that, subject to Court approval of the Assumption Motion, many of the Debtors' executory contracts and unexpired leases will be assumed by the Debtors and assigned to Buyer. With respect to any executory contracts that are assigned to Buyer, the Debtors shall be responsible, subject to certain exceptions, for any cure amount due to the non-debtor contracting party (each, a "Counterparty").
- The Sale is expressly subject to Bankruptcy Court approval and the procedures set forth in the Sale Procedures Order.
- The Closing must occur no later than April 15, 2010, and on certain conditions that are specified in Purchase Agreements.

**B. Additional Information**

20. The following additional information is provided to assist creditors and other parties in interest in evaluating the proposed Sale.

[5] In the event of any inconsistency between the description provided herein and the Purchase Agreement, the Purchase Agreement controls. This description is offered solely as an aid to permit interested parties and potential overbidders a convenient place to review the key terms contained in the Purchase Agreement.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

**i. Asset Valuation**

21. The Trustee has not obtained a formal valuation of the Assets. But based upon the expense involved and the Trustee's experience, belief and business judgment thorough prior sales, the auction process is, and will be the best evidence of the value of the Assets.

**ii. Relationship to Buyer**

22. The Purchase Agreements are the result of arms-length, extensive negotiations between the Trustee, the Debtors and the Stalking Horse Buyers. Based on Declarations In Support of Qualified Bid filed by each of the Stalking Horse Buyers, the Debtors or the Trustee do not have a connection with any of the Stalking Horse Buyers. No directors or officer of either of the Debtors is an officer or director of Stalking Horse Buyers or vice versa.

23. However for disclosure purposes – with the closing of the transaction with Stalking Horse Buyers, or to any Buyer, it may be contemplated that Buyer may extend offers of employment to certain of the Debtors' employees which may include certain officers of the Debtors.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

## V.

## DISCUSSION

### A. The Sale Should be Approved as Fair, Reasonable and in the Best Interests of Creditors and the Bankruptcy Estates

24. Section 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004 authorize a debtor or trustee to sell assets of the estate other than in the ordinary course of business, after notice and a hearing. See, e.g., In re Quintex Entertainment, Inc., et al, 950 F.2d 1492, 1495 (9th Cir. 1991). In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may be by private sale or public auction. See Fed. R. Bankr. P. 6004(f)(1). Here, the Trustee believes that her ability to select the highest and best bidder at a Court-supervised auction enhances and benefits the marketing process by providing a motivation for bidders to submit a qualified bid with a high market value.

25. Certain circumstances necessitate and allow for the sale of virtually all of the estate's property prior to confirmation of a plan. In re Lionel Corp., 722 F.2d 1063, 1070 (2nd Cir. 1983) ("There must be some articulated business justification . . . before the bankruptcy judge may

order such disposition."). One of the most obvious business justifications in any sale of estate assets is the ultimate purpose of obtaining the highest price for the property sold. In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841 (Bankr. C.D.Cal. 1991). "In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, i.e., it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith, and that it is an 'arms-length' transaction." Id.

26. In assessing the prudence of a Section 363 sale courts have examined (i) whether the proposed transaction has a valid business justification or good business reason, (ii) whether the sale is the result of good faith negotiations, and (iii) whether the proposed purchase price is fair and reasonable. See, e.g., 240 North Brand Partners, Ltd. v. Colony GFP Partners, L.P., (In re 240 North Brand Partners, Ltd.), 200 B.R. 653, 659 (9th Cir. B.A.P. 1996); In re Abbotts Dairies, 788 F.2d 143, 146, 149-50 (3rd Cir. 1986); Travelers Ins. Co. v. Plaza Family Partnership (In re Plaza Family Partnership), 95 B.R. 166 (Bankr. E.D. Cal 1989); Fearing v. Seror (In re Fearing), 143 Fed. Appx. 744 (9th Cir. 2005). All three of these factors are satisfied here.

**i. Valid Business Justification and Good Business Reason.**

27. The Ninth Circuit Bankruptcy Appellate Panel in Walters v. Sunwest Bank (In re Walters), 83 B.R. 14, 15-16 (B.A.P. 9th Cir. 1988) applied a flexible, case-by-case test to determine whether a sound business purpose justifies a proposed sale under Section 363(b) of the Bankruptcy Code. Adopting the reasoning of the Fifth Circuit in Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986) and the Second Circuit in In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983), the Panel noted that whether a proffered justification is sufficient will depend on the specifics of the case. The Court should consider all salient factors pertaining to the case and act to further the diverse interests of the debtor and creditors alike. Id.

28. The facts pertaining to the proposed Sale amply justify and substantiate the Trustee's business judgment that the proposed Sale is in the best interest of the Debtors, their creditors and the bankruptcy estates. The Trustee, through National Franchise Sales and her other

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

professionals, have explored a number of strategic alternatives – including proceeding with a plan under Bankruptcy Code §§ 1101 et seq., which is being filed simultaneously herewith.

29. The Stalking Horse Buyers' offers allow the bankruptcy estates to realize significant funds for 61 of the Debtors' stores without risk of future reduction in the value thereof. And it is anticipated by the time of the Sale Hearing all 65 Debtors' stores will have designated buyers. Moreover, the sale of the Assets may provide employment to many of the Debtors' employees, and will relieve the Debtors of liability under the Assumed Contracts following the Closing.

30. Moreover, the disposition of the Assets as proposed herein, with the submission of the stalking horse bids by the Stalking Horse Buyers, affords additional assurance that the highest and best price will be realized for the Assets. Pursuant to the terms of the Sale Procedures Order, notice of the proposed Sale (the "Sale Notice")[6] has been provided to all persons the Trustee believes may have an interest in the Assets. Further, the Trustee has provided notice of her selection of Stalking Horse Buyers to other Qualified Bidders and other interested parties. The Trustee believes that such actions may encourage overbids for the Assets at the Auction.

31. The courts have long recognized that where a sale by a debtor is made in good faith and upon a reasonable basis – as the proposed sale is here – "[t]he court will not entertain objections to a trustee's conduct of the estate." In re Curlew Valley Assocs., 14 B.R. 506, 513-514 (Bankr. D. Utah 1981). See also In re Southern Biotech, Inc., 37 B.R. 318, 322-23 (Bankr. M.D. Fla. 1983). This is because it is the "Trustee, not the Court, [that] is selling [the] property." In re Gulf States Steel, Inc., 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002).

32. In accordance with Walters and the foregoing cases, the Trustee submits that there is valid business justification and good business reason for the proposed sale of the Assets on the terms contained in the Purchase Agreements and in the manner provided in the Sale Procedures Order. As such, the Chapter 11 Trustee believes the Court should approve the Sale and allow it to move forward expeditiously.

---

[6] Pursuant to the terms of the Sale Procedures Order, the Chapter 11 Trustee served all parties in interest in these cases with the Sale Notice on or about February 8, 2010.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

**ii. The Sale is the Result of Good Faith Negotiations.**

33. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to any entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

34. Although the Bankruptcy Code does not define "good faith," courts have found that the good faith requirement focuses principally on the disclosure of all material sale terms and absence of fraud or collusion between bidders. See, e.g., In re Abbotts Dairies, supra, 788 F.2d at 147-48; see also, In re Apex Oil Co., 92 B.R. 847, 869-71 (Bankr. E.D. Mo. 1988). It is typically only "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" that leads to a determination that there was a lack of good faith in a sale proceeding. In re M Capital Corp., 290 B.R. 743, 748 n.3 (B.A.P. 9th Cir. 2003) (quoting Community Thrift & Loan v. Suchy (In re Suchy), 786 F.2d 900, 902 (9th Cir. 1985)).

35. While the Ninth Circuit does not require a finding of good faith be made by the Bankruptcy Court at the time of the Sale,[7] the circumstances of these cases indicate that the sale of the Assets to the Stalking Horse Buyers and the Buyer is proposed in good faith. The Purchase Agreements were negotiated at arm's-length. While Buyer may extend offers of employment to certain employees of the Debtors, the Purchase Agreements contain no special treatment for the Trustee, the Debtors or their bankruptcy estates, the Buyer, or their respective affiliates or insiders. The proposed sale is nothing more than a public auction for the Assets. Finally, full disclosure of the terms of the sale procedures and proposed transaction has been provided to creditors and other potential bidders pursuant to the Sale Notice submitted pursuant to the Sale Procedures Order.

36. Based on the foregoing, the Buyer – which may include all or none of the Stalking Horse Buyers – should be deemed a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code.

[7] *See* Thomas v. Namba (In re Thomas), 287 B.R. 782, 785 (B.A.P. 9th Cir. 2002) ("[T]he Ninth Circuit does not require that a finding of 'good faith' be made at the time of sale" (internal citations omitted).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

**iii. The Purchase Price is Fair and Reasonable.**

37. An auction sale is generally considered to establish sufficient value for the assets being sold. See, e.g., In re Abbotts Dairies, supra, 788 F.2d at 149. In other words, the mere fact that other parties can come forward to bid at an auction that has been noticed can satisfy the fair and reasonable price requirement of a Section 363 sale.

38. The Trustee believes that the Sale will result in the highest purchase price for the Assets being sold. The Assets have been widely marketed, as noted above, during these bankruptcy cases. The Trustee has provided notice of the Sale to all known potential bidders, thereby maximizing the possibility that competing bidders will come forward to pay a higher cash price for the Assets than offered by Buyer in the Purchase Agreement. In essence, Buyer has set the floor for the bidding at the Auction. Just as the Ninth Circuit acknowledged in Arnold & Baker, the precise value of the Property being sold will only be recognized at – and as a result of – the Sale of the Property. Arnold & Baker Farms v. U.S., 85 F.3d 1415, 1421 (9th Cir. 1996).

39. Finally, courts have recognized that a trustee is entitled to "'great judicial deference' in deciding which bid to accept as the best and highest bid." Gulf States Steel, supra, 285 B.R. at 516 (internal citation omitted). Here, too, the Trustee is entitled to deference in determining not only the manner in which the assets are to be sold, but how the value of those assets is to be maximized. Here, based on the history and circumstances of these cases, the Trustee believes that Stalking Horse Buyers' offer (subject to overbid) for the 61 stores (and any potential overbid) and the anticipated offer of the 8 remaining stores will satisfy the requirement that the prices paid for the Assets will be fair and reasonable.

**B. The Sale Satisfies the Requirements of Bankruptcy Code Section 363(f) for the Sale of the Estate's Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests**

40. Pursuant to Bankruptcy Code Section 363(f), the Sale will be free and clear of all liens, claims, encumbrances and other interests. Any such liens, claims, encumbrances and interests not satisfied prior to or concurrently with the Closing shall attach to the portion of the Debtors' proceeds from the Sale allocable to the property which was subject to the lien, claim,

encumbrance or interest in the same priority, validity and extent as such lien, claim or interest had at the time of the Closing.

41. The Trustee has provided notice to all parties who have filed financing statements against the Debtors with the Secretary of State for the State of California prior to the Petition Date. With respect to those financing statements filed in a jurisdiction other than California, such liens are in bona fide dispute on the basis that a filing must be made in the state in which the Debtors are organized or incorporated. See Cal. Comm. Code § 9301; U.C.C. § 9-301. The Assets may be conveyed free and clear of any such lien, claim, encumbrance or interest pursuant to Section 363(f)(4) of the Bankruptcy Code.

42. The Trustee has also secured the consent of the Debtors' primary secured lenders (the "Pre-Petition Secured Lenders"). It is anticipated that the Pre-Petition Secured Lenders under their respective debt facilities will have consented to the Sale pursuant to the terms of the Purchase Agreements, allowing the Sale to occur pursuant to Section 363(f)(2) of the Bankruptcy Code prior to the Sale Hearing. It is further anticipated that other secured lenders will have also consented to the Sale pursuant to Section 363(f)(2) prior to the Sale Hearing.

43. The remaining outstanding UCC filings in California pertain to specific equipment. To the extent the equipment is the subject of a true lease, the underlying lease will require assumption and assignment to the Buyer. The separate Assumption Motion filed by the Trustee identifies those unexpired leases and executory contracts that Buyer has identified to be assumed and assigned as part of the Sale. It is contemplated that any equipment lessors to unexpired leases that are included as an Assumed Contract will support the assignment to the Buyer. The Trustee intends to sell free and clear of any equipment liens representing disguised conditional sales contracts. The Trustee further anticipates that the creditors will consent to the Sale (allowing the sale to occur pursuant to Section 363(f)(2)).

**C. Section 363(b)(1) of the Bankruptcy Code, As It Relates to the Sale of Personally Identifiable Information, is Not Applicable**

44. The Trustee is not aware of a policy of the Debtors prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Debtors and, regardless, is not seeking to sell or lease personally identifiable information to any person.

**D. Accurate and Reasonable Notice Has Been Provided**

45. Evidence of service of all sale related pleadings in accordance with the Court's Sale Procedures Orderhas already been filed, or will be filed in advance of the Sale Hearing to demonstrate that all creditors and other parties-in-interest were afforded proper notice.

**E. Waiver of Federal Rule of Bankruptcy Procedure 6004(h)**

46. As a final matter, the Trustee requests that the stay imposed by Bankruptcy Rule 6004(h) upon orders authorizing the use, sale or lease of property be waived under the circumstances of these cases. Stalking Horse Buyers requires that the closing of the Sale occur no later than April 15, 2010. The Trustee believes that other potential buyers will likewise require a prompt closing. Moreover, it is in the interest of the Debtors' creditors and bankruptcy estates that the Sale be consummated as quickly as possible without any stay pending appeal because the Debtors' ongoing operational costs will be substantially reduced after the Sale closes.

47. The Trustee has noticed the hearing on this Sale Motion to all of its creditors and other parties-in-interest, and therefore any person having any objection to the Sale Motion has been afforded a reasonable opportunity to voice any objections or concerns. Accordingly, the Trustee is aware of no prejudice that would be caused by the Court's waiver of Bankruptcy Rule 6004(h).

WHEREFORE, the Trustee respectfully requests that this Court enter an order:

1. Subject to any limitations or modifications contained in the Court's order, without need for any further Court order, (a) granting the Sale Motion and approving the Purchase Agreements and the transactions contemplated thereby and (b) authorizing the Trustee to consummate and carry out the transactions described in the Sale Motion and the Purchase Agreements, and to undertake the obligations and other matters imposed, required or provided for therein such that, among other things, the Debtors, subject thereto, may sell assets, and grant or exchange releases as provided for in the Sale Motion or the Purchase Agreement or required thereby;

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

2. Under Section 363(f) of the Bankruptcy Code and without further order of the Court, approving the sale of the Assets to the Buyer free and clear of all liens, claims, encumbrances and interests with any such liens, claims, encumbrances or interests not satisfied prior to or concurrently with the Closing attaching to the portion of the proceeds of the Sale allocable to the property which was subject to the particular encumbrance in the same order and priority as such lien, claim, encumbrance or interest has as of the Closing;

3. Determining that the ultimate Buyer is a good faith purchaser of the Assets such that 11 U.S.C. § 363(m) will be applicable in the event of a Closing;

4. Finding that the terms of the Sale are fair and reasonable, and the ultimate Buyer is paying reasonably equivalent value for the Property;

5. Waiving the stay imposed by Bankruptcy Rule 6004(h) and authorizing the parties to hold the Closing immediately; and

6. Granting such other and further relief as this Court deems just and proper.

Dated: February 17, 2010

WINSTON & STRAWN LLP

By: /s/ Richard A. Lapping
Richard A. Lapping
Attorneys for Chapter 11 Trustee
BEVERLY N. MCFARLAND

SF:272367.6

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802