**39**

WINSTON & STRAWN LLP
Richard A. Lapping (SBN: 107496)
rlapping@winston.com
David A. Honig (SBN: 160721)
dhonig@winston.com
Marcus Colabianchi (SBN: 208698)
mcolabianchi@winston.com
101 California Street
San Francisco, CA 94111-5802
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Attorneys for Chapter 11 Trustee
BEVERLY N. MCFARLAND

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re: | **Case No. 09-40066** |
| FOOD SERVICE MANAGEMENT, INC. et al., | Chapter 11 |
| Debtors. | **(Jointly Administered with Case Nos. 09-40068, 09-40212, and 09-40214)** |
| ☐ Affects Food Service Management, Inc. | DC No. WS-17 |
| ☐ Affects Kobra Associates, Inc. | |
| ☐ Affects Sierra Valley Restaurants, Inc. | Date: March 17, 2010 |
| ☐ Affects Central Valley Food Services, Inc. | Time: 10:00 a.m. |
| ☒ Affects All Debtors | Dept.: C |

**EXHIBIT A IN SUPPORT OF "CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING GOING CONCERN SALE OF SUBSTANTIALLY ALL OPERATING ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. § 363"**

Exhibit A        Form of Asset Purchase Agreement ..........................................................2

---

[1] The Debtors in these proceedings are: Food Service Management, Inc., Kobra Associates, Inc., Sierra Valley Restaurants, Inc., and Central Valley Food Services, Inc.

SF:274351.1

## Exhibit A

*(Form of Asset Purchase Agreement)*

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("**Agreement**") is executed and entered into as of February __, 2010 (the "**Execution Date**"), by and between the following parties (each a "**Party**" and collectively, the "**Parties**"): (a) BEVERLY N. McFARLAND, acting solely in her capacity as the Chapter 11 Trustee (in such capacity, the "**Seller**"), for the bankruptcy estates of the Debtors (as defined below); and (b) _____ ("**Buyer**"); with reference to the following facts.

## RECITALS

A. On or about September 18, 2009 (the "**Petition Date**"), voluntary petitions for relief were filed on behalf of Food Service Management, Inc., Kobra Associates, Inc., Sierra Valley Restaurants, Inc., and Central Valley Food Services, Inc., each a California corporation (each a "**Debtor**" and collectively, the "**Debtors**"), under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "**Bankruptcy Code**"), in the United States Bankruptcy Court, Eastern District of California, Sacramento Division (the "**Bankruptcy Court**"). The Debtors' bankruptcy cases are jointly administered under Case Nos. 09-40066, 09-40068, 09-40212, and 09-40214 (collectively, the "**Bankruptcy Case**").

B. On September 30, 2009, the Court entered an order approving the acting United States Trustee's appointment of the Seller as Chapter 11 Trustee for the Debtors' Bankruptcy Cases. On October 2, 2009, the Seller's appointment became effective upon her delivery of the requisite bonds to the United States Trustee.

C. The Seller operates the Jack in the Box restaurants described on <u>Exhibit A</u> hereto (each a "**Store**" and collectively, the "**Stores**"). In this Agreement, the operation of such Stores is referred to as the "**Business**".

D. Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, all of the Debtors' right, title and interest in and to the assets described in <u>Section 2.1</u> of this Agreement (the "**Transaction**"). The entire Transaction is subject to approval by the Bankruptcy Court.

E. In connection with the Transaction and related matters, Seller has obtained or expects to obtain entry by the Bankruptcy Court of the "Order Granting Trustee's Motion for Approval of Bidding Procedures and Forms of Notice in Connection with Going-Concern Sale of Substantially All Operating Assets Free and Clear of Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363, and Related Assumption and Assignment of Executory Contracts Pursuant to 11 U.S.C. § 365 or Alternatively Through a Plan Filed By the Trustee Pursuant to 11 U.S.C. § 1106(a)(5) and § 1121" (as the same may be amended or supplemented from time to time, the "**Procedures Order**").

**NOW, THEREFORE**, in consideration of the mutual promises and agreements contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms and conditions of this Agreement, the Parties hereby agree as follows:

1

# ARTICLE 1

## BANKRUPTCY COURT APPROVAL OF THIS AGREEMENT

**1.1    Binding Effect; Entry of Approval Order**.    Article 1 and Article 4 of this Agreement are effective upon the Execution Date.    Except for Article 1 and Article 4, this Agreement will become effective only upon the entry by the Bankruptcy Court of one or more final and binding orders of the Bankruptcy Case (collectively, the "**Approval Order**") (a) approving this Agreement and the sale of the Property (as defined below) to Buyer pursuant to this Agreement, free and clear of liens, claims, encumbrances, and interests pursuant to Section 363(f) of the Bankruptcy Code, and (b) approving the assumption by the Debtors and assignment to Buyer of certain Assumed Contracts (as defined below) pursuant to Section 365 of the Bankruptcy Code.  If no Appeal of the Approval Order (an "**Appeal**") is timely filed pursuant to Rule 8002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), or if an appeal of the Approval Order is timely filed pursuant to Bankruptcy Rule 8002, but no stay ("**Stay**") of the execution of the Approval Order is issued pursuant to Bankruptcy Rule 7062 pending resolution of the Appeal, then the Parties will proceed with the Transaction.

**1.2    Bankruptcy Court Approval**.

**1.2.1    *Filing of Sale Motion*.**    Seller and Buyer acknowledge and agree that this Agreement and the Transaction contemplated hereby are subject to Seller's right to accept a superior bid at the Auction (as defined in the Procedures Order) and contingent upon the approval and authorization of the Bankruptcy Court.    Seller agrees to file a motion (the "**Sale Motion**") as promptly as practicable on or about the Execution Date, and to seek Bankruptcy Court approval of this Agreement and the Transaction contemplated hereby, subject to higher and better offers.  Seller shall promptly confer with Buyer regarding any written objections filed with the Bankruptcy Court with respect to the Sale Motion.

**1.2.2    *Obligation to Seek Approval Order*.**    Following the filing of the Sale Motion and to the extent Buyer is declared the Successful Bidder (as defined in the Procedures Order), Seller shall use its reasonable best efforts to promptly obtain entry of the Approval Order and to perform such other acts as may be necessary to permit Seller to consummate the Transaction contemplated by this Agreement.  Any changes to the form of the Approval Order affecting the economic terms of the Transaction, or the closing conditions thereto, must be approved by Buyer in its sole and absolute discretion and by Seller in its sole and absolute discretion.  Any other changes to the form of the Approval Order must be approved by Buyer in its reasonable discretion and by Seller in its reasonable discretion.    The Approval Order shall contain findings of fact and conclusions of law establishing, among other things, that: (a) Seller is authorized to transfer to Buyer all interests of Seller in the Property free and clear of liens, claims, encumbrances, and interests of any nature whatsoever, to the fullest extent allowable under the Bankruptcy Code; (b) Seller is authorized to assign the Assumed Contracts to Buyer; (c) Buyer is a good-faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code; and (d) the fourteen-day stay provision of Bankruptcy Rule 6004 is waived.  In the event an Appeal is filed, Seller and Buyer shall each use their respective commercially reasonable efforts to defend such Appeal or, by mutual written agreement, shall close the Transaction contemplated hereby unless such closing is subject to a Stay.  Seller shall keep Buyer reasonably informed of the status of its efforts to obtain the entry of

the Approval Order. Seller shall give Buyer reasonable advance written notice of any hearings regarding motions respecting the Approval Order, and Buyer shall have the right to appear and be heard at any such hearings.

**1.3     Procedures Order**. Buyer and Seller acknowledge that they are bound by the terms of the Procedures Order as applicable to this Agreement and the Transaction contemplated hereby. Any changes to the form of Procedures Order affecting the economic terms of the Transaction contemplated by this Agreement, or the closing conditions thereto, must be approved jointly by Buyer and Seller or by order of the Bankruptcy Court. Any other changes to the form of Procedures Order must be approved by Seller in its reasonable discretion.

**1.4     Cooperation in Bankruptcy Court Matters**. Buyer agrees that it will promptly take such actions as are reasonably requested by Seller or ordered by the Bankruptcy Court to assist in obtaining entry of the Approval Order and a finding of adequate assurance of future performance by Buyer under the Assumed Contracts as required by Section 365(b)(1)(C) of the Bankruptcy Code, including, without limitation, furnishing affidavits, non-confidential financial information, confidential information subject to a reasonable form of confidentiality agreement, or other documents or information for filing with the Bankruptcy Court, and shall make its employees and representatives available to be interviewed by Seller's attorneys and to testify before the Bankruptcy Court and at depositions in connection with the foregoing. In all other respects, with regard to each Assumed Contract, Buyer shall use commercially reasonable efforts to provide adequate assurance of Buyer's future performance as required under the Bankruptcy Code. If Buyer is declared the Successful Bidder and a written objection to the Sale Motion is filed that, if upheld, would prohibit or otherwise prevent the Closing (as defined below) from occurring pursuant to the terms of this Agreement, Seller and Buyer shall use commercially reasonable efforts to have such objection overruled.

## ARTICLE 2

## PURCHASE AND SALE OF ASSETS; PURCHASE PRICE; DEPOSIT

**2.1     Purchase and Sale of Property; Transfer of Assumed Contracts; Assumption of Liabilities**. Subject to the terms and conditions of this Agreement, including, without limitation, approval of the Bankruptcy Court, Seller hereby agrees to sell, transfer, assign, convey and deliver to Buyer, free and clear of liens, claims, encumbrances, and interests pursuant to Section 363(f) of the Bankruptcy Code, and Buyer agrees to purchase, assume and accept from Seller, all of Seller's right, title and interest in and to the following (collectively, the "**Property**"), as-is, where-is, without any representation or warranty, express or implied, to the extent the same are located on the premises of any Store or are used solely in connection with the Business at such Store:

(a)     The real property leases identified on Exhibit B hereto (the "**Leases**");

(b)     All machinery, equipment, fixtures, furniture, POS software, signs, smallwares, and cooking utensils, and all other personal property (exclusive of cash (other than Petty Cash, as defined below), checks, deposits, receivables, funds payable to Seller under pending credit and debit card transactions, bank accounts, and other cash equivalents), including the items listed on Exhibit C hereto;

3

(c)     All usable inventories of food, paper, operating supplies, and uniforms, including the items listed on Exhibit D hereto (the "**Inventory**");

(d)     All petty cash located at each Store, in an amount not to exceed $1,000 per Store (the "**Petty Cash**"), as set forth on Exhibit D hereto;

(e)     All permits, licenses, authorizations, registrations, consents and approvals relating to the Stores and/or Business (collectively, the "**Permits**"), whether governmental or otherwise, including those set forth on Exhibit E hereto, to the extent they are assignable or transferable in connection with the Transaction;

(f)     All telephone numbers for the Stores;

(g)     Pursuant to Section 365 of the Bankruptcy Code, the franchise agreements listed on Exhibit F-1 hereto and the other executory contracts listed on Exhibit F-2 hereto (collectively, the "**Assumed Contracts**");

(h)     Subject to applicable provisions of the Bankruptcy Code and orders of the Bankruptcy Court, copies of all books and records of each Debtor relating to the Stores and/or Business, in the form(s) maintained in the ordinary course of business, including any personnel records relating to employees of each Debtor hired by Buyer; provided, however, that the foregoing shall not include any corporate minute books, stock books or similar corporate records of any Debtor, nor, with respect to personnel records, any gratuitous, subjective or other information which Seller, in its discretion, determines that it may not disclose to Buyer under applicable law;

(i)     All rights to any beverage rebates, solely to the extent payable by their terms on or after the Closing Date (as defined below);

(j)     The leasehold interest or right to purchase or acquire the equipment, machinery and other tangible personal property (collectively, **"Leased Equipment"**) pursuant to leases or contracts that cannot otherwise be assumed and assigned pursuant to Section 365 of the Bankruptcy Code because they are subject to financings or otherwise do not qualify as executory contracts, including those described on Exhibit G hereto; provided, that with respect to the foregoing, Seller's sole obligation shall be to make commercially reasonable efforts to facilitate a transfer of such Leased Equipment to Buyer pursuant to either (x) a consensual assignment of the existing lease or contract to Buyer (in which event such lease or contract shall constitute an Assumed Contract), or (y) a new and separate lease or other contract between Buyer and the applicable non-Debtor party, in each case effective at Closing.

In addition to the foregoing, and as consideration for the Transaction, Buyer shall assume, pay, perform, satisfy and discharge (i) all liabilities arising out of, incurred in connection with or related to the ownership of the Property to the extent arising from acts taken or omissions made from and after the Closing Date or related to the period from and after the Closing Date and (ii) those liabilities described on Exhibit H hereto.

**2.2     Excluded Property**.  Notwithstanding anything to the contrary contained in Section 2.1 above or elsewhere in this Agreement, the Property does not include, Buyer shall not acquire

(nor assume any liability related to), and Seller shall retain all right, title and interest in and to the following (collectively, "**Excluded Property**"):

(a)     All corporate minute books, corporate seals, stock books, charter documents and other corporate books and records pertaining to the existence and organization of the Debtors;

(b)     Except to the extent described in Section 2.1(h), any assets relating to or associated with the Stores or the Business located in (i) the Debtors' offices in Roseville, California or Madera, California, or (ii) the Debtors' Rocklin, California warehouse;

(c)     Cash (other than Petty Cash), cash equivalents, investments, accounts and notes receivable, and funds payable to Seller under pending credit and debit card transactions;

(d)     Pre-paid deposits and rebates, refunds, returns or similar payments attributable to, or based upon the period through the Closing Date, or any claims for such rebates, refunds or similar payments (collectively, the "**Prepaid Expenses and Rebates**"), except such Prepaid Expenses and Rebates specifically acquired by Buyer;

(e)     All bank and investment accounts maintained by or for any Debtor;

(f)     All rights of each Debtor in, to and under any and all contracts or agreements of any nature for which the obligations of the Debtor party thereto are not expressly assumed by Buyer pursuant to Section 2.1 above, including such Leases, contracts, licenses, permits and approvals relating to the Stores or the Business that by their terms are nontransferable or not assignable, or for which Seller has elected not to obtain a consent or approval, in its sole and reasonable discretion, so long as the Transaction is capable of being consummated notwithstanding such election; and

(g)     All claims, rights, proceeds or recoveries arising out of any actual, pending, threatened or potential litigation or cause of action to which any Debtor is, or may in the future be, a party;

(h)     Any software utilized by the Debtors at the office and warehouse locations described in Section 2.2(b);

(i)     All rights, claims, refunds. adjustments, recoveries, payments from, and/or proceeds of any insurance policies to the extent they relate to Excluded Property;

(j)     All preference or avoidance claims and actions of Seller or Debtors, including, without limitation, any such claims and actions arising under Sections 510, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code;

(k)     Any rights to refunds for taxes and assessments, of any kind whatsoever, paid on or with respect to the Property and attributable to any period prior to the Closing Date, or with respect to any Excluded Property;

(l)     Any and all claims, credits, refunds, abatements, allocations, causes of action, claims for relief, choses in action, rights of recovery, rights of set-off, rights of indemnity, contribution or

5

recoupment, counter-claims, cross-claims and defenses of Seller or Debtors to the extent related to any Excluded Property or attributable to any period prior to the Closing Date;

(m)     All rights of Seller under this Agreement or any agreement entered into in connection with this Agreement or the Transaction contemplated hereby; and

(n)     The assets of any Debtor used in connection with the Stores and set forth on Exhibit I hereto.

Seller shall retain all liabilities not relating to the Property and liabilities relating to the Property arising solely from acts taken or omissions made prior to or related solely to the period prior to the Closing Date (except to the extent set forth on Exhibit H hereto).

**2.3    Purchase Price; Good Faith Deposit**.    The purchase price for the Property, excluding the Inventory and Petty Cash, shall be _____ Dollars ($_____), subject to adjustment in accordance with Section 2.4 hereof.  In addition, the Buyer shall purchase the Petty Cash at face value on the Closing Date and shall purchase the Inventory at current wholesale prices to be determined on the Closing Date.  The aggregate purchase price for the Property, inclusive of the Inventory and Petty Cash, is referred to as the "**Purchase Price**."  The Purchase Price shall be payable as follows:

**2.3.1** *Good Faith Deposit*.  Within two (2) business days of the Execution Date, Buyer shall increase its Qualifying Deposit (as defined in the Procedures Order) to an aggregate amount equal to $20,000 per Store (the "**Good Faith Deposit**") and deliver such amount to the Escrow Agent (as defined in the Procedures Order).  The Good Faith Deposit shall be credited against the Purchase Price at Closing.  If Buyer is declared the maker of a Successful Bid then, within two (2) business days of such declaration, Buyer shall increase its Good Faith Deposit with the Escrow Agent to an aggregate amount equal to (a) the greater of five percent (5%) of the Purchase Price, or (b) $25,000 per Store; provided, that Seller may require that Buyer further increase its Good Faith Deposit with respect to any proposed acquisition of Third-Party Real Property (as such term is defined in the Procedures Order).  If Seller closes one or more Stores pursuant to Section 5.1, and the Good Faith Deposit is greater than the aggregate Purchase Price for the remaining Stores to be purchased by Buyer, the difference between the Purchase Price and the Good Faith Deposit shall be refunded to Buyer.  Except as otherwise provided in this Section 2.3.1 or the Procedures Order, the Good Faith Deposit shall be nonrefundable unless this Agreement is terminated by Buyer pursuant to Section 6.1 due to a material breach or default of Seller.  Retaining the Good Faith Deposit in no way limits, or is in lieu of, Seller's ability to avail itself of any and all remedies available to it in equity or at law.

**2.3.2** *Balance*.  On or before 12:00 p.m. (Pacific Time) on the Closing Date, Buyer shall pay the balance of the Purchase Price over and above the Good Faith Deposit in cash or certified funds to Seller in accordance with Seller's instructions.

**2.4    Adjustment of Purchase Price; Matching Right of JIB**.

**2.4.1** *Store Closures by Seller*.  If, prior to the Closing Date, Seller closes a Store pursuant to Section 5.1 hereof, the Purchase Price payable by Buyer shall be reduced by the amount of the Purchase Price allocated to such Store, as set forth on Exhibit A hereto.

6

**2.4.2** *Matching Right of JIB*. Buyer acknowledges and understands that consummation of the Transaction contemplated by this Agreement is subject to the right of Jack in the Box, Inc. ("**JIB**"), to match the terms of this Agreement in the manner set forth in the Procedures Order. If JIB exercises its matching right with respect to the Transaction contemplated hereby, and such bid by JIB is approved by the Bankruptcy Court, then (a) this Agreement shall be deemed terminated by mutual agreement of the Parties in accordance with Section 6.1(a) hereof, (b) the Good Faith Deposit shall be refundable to Buyer pursuant to the terms of the Procedures Order, and (c) Buyer shall be entitled to payment of the Break-up Fee to the extent, and as and when required, by the Procedures Order.

# ARTICLE 3

# CLOSING

**3.1     Closing Date and Place**. Each Party will perform all acts required of such Party pursuant to this Agreement to enable the Closing to occur by no later than April 15, 2010, at the offices of Seller's counsel or the Escrow Agent, or at such other place and/or on such other date as shall be agreed upon by Buyer and Seller pursuant to the Procedures Order or otherwise ordered by the Bankruptcy Court. As used in this Agreement, "**Closing**" means the occurrence of each of the events set forth in Section 3.2 hereof, and "**Closing Date**" means the date upon which the Closing occurs.

**3.2     Closing**. The "**Closing**" means the occurrence of all of the following events, which the Parties will cause to occur concurrently pursuant to this Agreement:

(a)     Seller has delivered to Buyer a certified copy of the Approval Order, no Stay has been issued, and any applicable time for filing an Appeal has expired.

(b)     Seller has executed and delivered to Buyer a Bill of Sale in substantially the form attached as Exhibit J hereto.

(c)     Each Party has executed and delivered to the other Party two (2) counterparts to the Assignment and Assumption Agreement in substantially the form attached as Exhibit K hereto.

(d)     Buyer has paid to Seller by bank wire transfer of immediately available funds, to the bank account(s) designated by Seller, an amount equal to the balance of the Purchase Price.

(e)     Buyer has paid any and all escrow fees and costs.

(f)     The representations of each Party contained in Article 4 hereof are true and correct at and as of the Closing Date with the same effect as though made at and as of the Closing Date.

(g)     Each Party has duly performed and complied with all agreements, covenants and conditions required by this Agreement to be performed or complied with by such Party.

(h)     The conditions set forth in Section 3.3 hereof have occurred.

(i)     Neither Party shall have terminated this Agreement pursuant to Section 6.1 hereof.

**3.3****Third-Party Real Property**.   To the extent that Buyer proposes to purchase any Third-Party Real Property in connection with this Agreement, Buyer acknowledges that the Closing shall occur without regard to whether Buyer's proposed purchase of such Third-Party Real Property has been consummated.

**ARTICLE 4**

**REPRESENTATIONS**

**4.1****Representations of Seller**.  Seller hereby makes the following representations and warranties ("**Seller's Representations**") to Buyer:

**4.1.1****Legal Capacity of Debtor**.  Seller is the duly appointed Chapter 11 Trustee for the bankruptcy estate of Debtors.

**4.1.2****Brokers and Finders**.   Except for Seller's financial advisor, National Franchise Sales, Inc., whose fees will be paid from Seller's proceeds, Seller has not retained any broker or finder in connection with the Transaction so as to give rise to any claim against Buyer for any brokerage or finder's commission, fee or similar compensation

**4.1.3****Anti-Terrorism Laws**.  Seller represents and warrants to Buyer that Seller is not, and will not be, a person or entity with whom Buyer is restricted from doing business under the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, H.R. 3162, Public Law 107-56 (commonly known as the "USA Patriot Act") and Executive Order Number 13224 on Terrorism Financing, effective September 24, 2001, and regulations promulgated pursuant thereto, including, without limitation, persons and entities named on the Office of Foreign Asset Control Specially Designated Nationals and Blocked Persons List (collectively, **"Anti-Terrorism Laws"**).

**4.1.4****No Other Representations**.   Seller makes no representation or warranty, express or implied, to Buyer, and hereby disclaims any representation or warranty, express or implied, with respect to the Business, the Property, the Stores or any other matter, including any representation or warranty as to merchantability, fitness for a particular purpose or future results, other than as expressly set forth in this Section 4.1.

**4.2****Representations of Buyer**.  Buyer hereby makes the following representations and warranties ("**Buyer's Representations**") to Seller:

**4.2.1****Buyer's Status**.  Buyer is a _____ duly organized, validly existing and in good standing under the laws of the State of _____.

**4.2.2****Legal Capacity of Buyer**.  (a) Buyer has the requisite power, authority, and legal capacity to make, execute, enter into, and deliver this Agreement and to perform its obligations under this Agreement, (b) any person executing and delivering this Agreement on behalf of Buyer is duly authorized to do so; and (c) neither this Agreement nor the performance by Buyer of any obligation of Buyer under this Agreement will violate any provision of any article, by-law, operating agreement or partnership agreement of Buyer or any contract, covenant, agreement, condition, restriction, injunction or order by which Buyer is bound.

8

**4.2.3** **Consents**. Except for the entry of the Approval Order and the conditions set forth in the Procedures Order, no consent, approval, authorization, permit, order, filing, registration or qualification of or with any court, governmental authority or third person is required to be obtained by Buyer in connection with the execution and delivery by Buyer of this Agreement or the consummation by Buyer of the Transaction.

**4.2.4** **Brokers and Finders**. Buyer has not retained any broker or finder in connection with the Transaction so as to give rise to any valid claim against Seller for any brokerage or finder's commission, fee or similar compensation.

**4.2.5** **Terms of Sale; Investigation**. Buyer has made such investigation as it has deemed appropriate in connection with the decision to enter into this Agreement. Buyer has had the opportunity to inspect the Property, visit with Seller and meet with Seller's representatives to discuss the Business. Buyer is relying on the results of such investigation and the advice of its own advisors and has not relied upon any statement or representation made by Seller or Debtors or any director, officer, employee, agent, attorney, accountant, or affiliate thereof, other than the covenants, representations and warranties of Seller set forth in this Agreement. Seller makes no representations or warranties, express or implied, of any kind concerning the past, present or future profitability or viability of the Stores or the Business, except as expressly set forth in this Agreement. Buyer acknowledges that EXCEPT AS OTHERWISE SPECIFICALLY SET FORTH IN THIS AGREEMENT, BUYER WILL ACCEPT THE PROPERTY AND THE ASSUMED LIABILITIES AT THE CLOSING "AS-IS, WHERE-IS" AND "WITH ALL FAULTS" WITHOUT ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED

**4.2.6** **Anti-Terrorism Laws**. Buyer represents and warrants to Seller that Buyer is not, and will not be, a person or entity with whom Seller is restricted from doing business under any Anti-Terrorism Laws. The sources of all cash used in connection with the Transaction will be fully disclosed to Seller and the Bankruptcy Court prior to Closing, including any and all funds provided by a foreign national individual or entity of any country other than the United States of America.

**4.2.7** **Acknowledgement of Trustee Capacity**. Buyer acknowledges that none of Beverly N. McFarland (as an individual, as Seller, or in her corporate capacity), Seller's company, The Beverly Group, Inc., or their respective officers, directors, shareholders, attorneys, accountants, agents, heirs, successors, assigns, or employees shall have any personal or corporate liability whatsoever in connection with the performance of any obligations of Seller under this Agreement. Buyer agrees to look solely to the estates of the Debtors for the recovery of any judgment obtained by Buyer arising from or in connection with Seller's obligations under this Agreement.

**4.3** **Solvency; Availability of Funds**.

**4.3.1** As of the Closing Date and immediately after consummating the Transaction contemplated by this Agreement, Buyer represents, warrants and covenants that it will not (i) be insolvent (either because its financial condition is such that the sum of its debts is greater than the fair value of its assets or because the present fair value of its assets will be less than the amount required to pay its probable liabilities as they become due and payable), (ii) have unreasonably small capital with which to engage in its business, or (iii) have incurred or planned to incur debts beyond its ability to repay such debts as they mature.

9

**4.3.2**   As of the Closing, Buyer will have cash and working capital available that are sufficient to enable Buyer to pay the Purchase Price and any other amounts required hereunder and to consummate the Transaction contemplated hereby.  Buyer acknowledges that its obligation to consummate the Agreement and the Transaction contemplated hereby is not subject to any financing contingency.

# ARTICLE 5

## OTHER OBLIGATIONS PENDING CLOSING

**5.1**   **Conduct of Business**.  Except as otherwise specifically permitted or required by this Agreement, Seller will continue to operate the Business in the ordinary course consistent with the fact that the Debtors are in bankruptcy and subject to the supervision of the Bankruptcy Court. Seller may elect to close any Store(s) without prior notice to Buyer if Seller determines that an imminent threat to public health and safety exists.  Subject to the approval of the Bankruptcy Court and with prior notice to Buyer, Seller may also elect to close one or more Stores if, in Seller's judgment, such closure is in the best interest of the Debtors' estates.

**5.2**   **No Inconsistent Actions**.  Following the Execution Date, neither Buyer nor Seller will take any action inconsistent with this Agreement pending either the Closing or the termination of this Agreement pursuant to Article 6 hereof.

**5.3**   **Third-Party Consents**.  Following the Execution Date, Seller and Buyer shall use commercially reasonable efforts to obtain consents and approvals from third parties for the assignment of the Assumed Contracts and transfer of other Property to the extent Seller determines, in its reasonable discretion, that such consents and approvals are necessary to transfer and assign such Assumed Contracts or Property to Buyer, and release Seller and Debtors from any obligations in connection therewith.  If any Assumed Contract or Permit to be assigned to Buyer pursuant to this Agreement cannot be assigned to Buyer under Section 365 of the Bankruptcy Code, or as a matter of law shall require the consent of any party thereto other than Seller, this Agreement shall not constitute an agreement to assign, and shall not be construed as an attempt to transfer or assign (despite any designation herein as an Assumed Contract or Permit), such Assumed Contract or Permit, and Seller shall not be obligated to cause such Assumed Contract or Permit to be assigned to or assumed by Buyer.

# ARTICLE 6

## TERMINATION

**6.1**   **Grounds for Termination**.   This Agreement may be terminated upon the occurrence of any of the following events, by:

(a)   mutual written agreement of the Parties at any time prior to entry of the Approval Order;

(b)   Buyer or Seller, if Buyer is not declared the Successful Bidder or a Back-up Bidder (as defined in the Procedures Order);

(c)  any Party not in default of this Agreement, if the Closing does not occur on or before April 21, 2010 (provided, that if the Closing does not occur prior to such date due to a material breach of this Agreement by a Party, such breaching Party may not terminate this Agreement pursuant to this Section 6.1(c));

(d)  by either Party if there shall be in effect a final, non-appealable order of a governmental body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the Transaction contemplated hereby, it being agreed that the Parties shall promptly appeal any adverse determination that is not non-appealable (and pursue such appeal with reasonable diligence);

(e)  any Party not in default of this Agreement, upon a material breach and default of this Agreement by the other Party which breach and default remains uncured for a period of three (3) business days following the date upon which written notice of the breach and default is given by the non-defaulting Party to the defaulting Party;

(f)  Buyer, if as of the time of the Closing, any Seller's Representation is materially untrue, unless waived by Buyer;

(g)  Seller, if as of the time of the Closing, any Buyer's Representation is materially untrue;

(h)  Buyer, if Seller fails to timely satisfy any material obligation of Seller pursuant to this Agreement required to be satisfied prior to or at the Closing; and

(i)  Seller, if Buyer fails to timely satisfy any material obligation of Buyer pursuant to this Agreement required to be satisfied prior to or at the Closing.

**6.2**  **No Obligation to Terminate**.  Except as may be otherwise set forth in this Agreement, no Party having a right to terminate this Agreement pursuant to Section 6.1 will be required to exercise such right, or otherwise be prohibited from enforcing this Agreement by reason of having any such unexercised right to terminate this Agreement.

**6.3**  **Notice of Termination**.  Any Party terminating this Agreement pursuant to Section 6.1 will give immediate notice of such termination to the other Party at the notices address(es) set forth in Section 7.16, specifying in the notice the provision of this Agreement pursuant to which the termination is made.

**6.4**  **Effect of Exercising Right of Termination**.  If this Agreement is validly terminated as provided herein, then, subject to the provisions of the Procedures Order, except as set forth in Section 2.3.1 and as may be required to enforce the provisions of Section 2.3.1, each Party will promptly return to the other Party any monies, documents or other property of the other Party in its possession or control received pursuant to or in contemplation of this Agreement, this Agreement will terminate and be of no further force or effect, and each Party will have no further obligation or liability to the other by reason of this Agreement. Nothing in this Section 6.4 shall relieve any Party of any liability for fraud, intentional misrepresentation or willful breach of this Agreement prior to the date of termination.

11

**6.5** **Break-up Fee**.  In the event the Buyer is not the Successful Bidder, the Buyer shall be entitled to receive a cash payment of $2,500 per Store to be acquired under this Agreement. Seller shall pay to Buyer the Break-up Fee to the extent, and as and when required, by the Procedures Order.

## ARTICLE 7

## MISCELLANEOUS

**7.1** **Expenses**.  Utility costs, charges and expenses arising under the Assumed Contracts and other expenses affecting the Property shall be prorated between Buyer and Seller as of the Closing Date, and, upon the Closing, Buyer assumes all expenses allocable to the period from and after the Closing.  All such prorations shall be made on the basis of the actual number of days of the month which shall have elapsed as of the Closing Date and based upon the actual number of days in such month and a three hundred sixty-five (365) day year.  For purposes of calculating prorations, Buyer shall be deemed to be title holder of the Property, and therefore entitled to the income and responsible for the expenses thereof for the entire day upon which the Closing occurs.  Each Party shall assume and bear its own expenses, costs and fees incurred in the preparation and execution of this Agreement and compliance herewith, including attorneys' and accountants' fees, whether or not the Transaction is consummated; provided, that if any Party commences legal proceedings against the other Party to enforce the provisions of this Agreement or to declare any rights or obligations under this Agreement, the prevailing Party will recover from the losing Party its costs of suit, including reasonable attorneys' fees, as determined by the Bankruptcy Court in such proceeding.

**7.2** **Integration**.  This Agreement (including all Schedules and Exhibits), are the sole agreements between the Parties regarding the Transaction.  All prior and contemporaneous negotiations and agreements between the Parties, oral or written, regarding the Transaction, are hereby superseded.  No Party has the authority to orally modify this Agreement, or to make any oral representation or oral agreement regarding this Agreement or the Transaction.

**7.3** **Amendment, Waiver and Modification**.  Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated except by written consent of the Party against which such change, waiver, discharge or termination is sought to be enforced, or by order of the Bankruptcy Court.

**7.4** **Construction**.  The Parties acknowledge that each Party was represented by legal counsel (or had the opportunity to be represented by legal counsel) in connection with this Agreement and that each of them and its legal counsel have reviewed and revised this Agreement, or have had an opportunity to do so, and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any amendments or any Exhibits or Schedules hereto or thereto.

**7.5** **Captions; Capitalized Terms**.  The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.  Capitalized terms used in the Schedules and Exhibits hereto and not otherwise defined therein shall have the meanings ascribed to them in this Agreement.

SF:274237.1

**7.6      Further Assurances**.  Each Party will promptly execute and deliver all documents and take all actions, including the payment of money, reasonably required to effectuate the Transaction and perform its duties pursuant to this Agreement.

**7.7      Assignment; Successors; Parties in Interest**.   This Agreement shall not be assignable by Buyer without the prior written consent of Seller or order of the Bankruptcy Court. Any attempt to assign this Agreement without such consent or order shall be void and of no effect. This Agreement shall inure to the benefit of, and be binding on and enforceable against, each Party and such permitted successors and assigns of the respective Parties, and nothing in this Agreement, express or implied, is intended to confer upon any employee or affiliate of either Party or any other person any rights or remedies of any nature whatsoever under this Agreement.

**7.8      Time is of the Essence**.  With respect to all dates and time periods set forth or referred to in this Agreement, time is of the essence, such that each Party will perform all acts required of such Party pursuant to this Agreement by the date or within the time period required pursuant to this Agreement.

**7.9      Business Day**.  As used in this Agreement, the term "business day" shall mean a day other than a Saturday, Sunday or other day on which commercial banks in the State of California are closed.

**7.10     Access to Books and Records after Closing**.  Buyer shall permit Seller to have access to the books and records relating to the Property for a period of three (3) years after the Closing, or such other period as required by the Bankruptcy Court.  Notwithstanding the foregoing, Buyer agrees to notify Seller prior to destroying any books and records relating to the Property and allow Seller to make and retain copies, at Seller's expense, of such books and records.

**7.11     Sales and Transfer Taxes**.  Buyer shall bear any sales or transfer tax arising from the Transaction.

**7.12     Allocation of Purchase Price**.  The Parties shall use their commercially reasonable efforts to agree to an allocation of the Purchase Price prior to or at the Closing for tax purposes and such other purposes as Seller deems necessary.  Each Party will report this transaction under Section 1060 of the Internal Revenue Code (on IRS Form 8594) in accordance with this allocation of the Purchase Price.

**7.13     Schedules and Exhibits**.  The Schedules and Exhibits are a part of this Agreement as if fully set forth herein.  All references to Sections, Articles, Schedules and Exhibits shall be deemed references to such parts of this Agreement, unless the context shall otherwise require. Disclosure of any fact or item in any Schedule hereto referenced by a particular Section in this Agreement shall, should the existence of the fact or item of its contents be relevant to any other Section, be deemed to be disclosed with respect to that other Section whether or not an explicit cross-reference thereto appears.

**7.14     Counterparts**.  This Agreement may be executed in several counterparts, each of which shall constitute one and the same instrument.  This Agreement may be executed by facsimile signatures, which shall have the same force and effect as original signatures.

**7.15** **Governing Law**. This Agreement shall be governed in all respects, including validity, interpretation and effect, by the laws of the State of California, without giving effect to the conflict of laws and rules thereof. Each Party consents to the exclusive jurisdiction of the Bankruptcy Court.

**7.16** **Notices**. Any notice by any Party to any other Party pursuant to this Agreement must be made in writing and delivered to the other Party at the address shown below, until written notice of a different address is given by the other Party pursuant to this Section 7.16. Payments to be made pursuant to this Agreement will be deemed made only upon actual receipt. Notices given by personal service will be deemed received upon delivery. Notices given by first class mail, postage prepaid, addressed to the address required by this Section 7.16, will be deemed received three (3) business days following the deposit thereof with the United States Post Office. Notices given by overnight courier service will be deemed received on the date of delivery confirmed by the courier service. Notices given by electronic facsimile transmission will be deemed received on the date upon which the recipient's facsimile machine confirms electronically the receipt of the notice, provided that a copy of any notice given by facsimile transmission must also be sent to the recipient by first class mail, postage prepaid, addressed to the address required by this Section 7.16. The rejection by a Party of a notice, the refusal by a Party to accept a notice, or the inability of another Party to deliver a notice because of a change of address of a Party of which no notice of change of address is given pursuant to this Agreement, will constitute delivery of the notice. Telephone numbers and e-mail addresses, if listed, are listed for convenience purposes only and not for the purpose of giving notice pursuant to this Agreement.

| | |
|---|---|
| To Seller: | Beverly N. McFarland, Chapter 11 Trustee<br>P. O. Box 188<br>Rocklin, CA 95677<br>Facsimile: (916) 783-3566 |
| With copies to: | Winston & Strawn LLP<br>101 California Street, 39th Floor<br>San Francisco, CA 94111<br>Attn: David A. Honig<br>Facsimile: (415) 591-1400 |
| To Buyer: | **[TO BE ADDED]** |
| With copies to: | **[TO BE ADDED]** |

14

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement as of the Execution Date.

**BUYER:**

**SELLER:**

By: _____

BEVERLY N. MCFARLAND, SOLELY IN HER CAPACITY AS CHAPTER 11 TRUSTEE FOR THE DEBTORS

# EXHIBIT A

## STORES

| Store Number | Address | Owner | Price |
|---|---|---|---|
| 441 | 2124 North Blackstone Highway<br>Fresno, CA 93703 | Central Valley Food Services, Incorporated | |
| 446 | 500 Broadway<br>Chico, CA 95928 | Kobra Associates, Inc. | |
| 465 | 595 W. Olive Avenue<br>Merced, CA 95348 | Central Valley Food Services, Incorporated | |
| 467 | 337 G Street<br>Davis, CA 95616 | Kobra Associates, Inc. | |
| 471 | 13421 East Lincoln Way<br>Auburn, CA 95603 | Kobra Associates, Inc. | |
| 475 | East Monte Vista Avenue<br>Vacaville, CA 95688 | Kobra Associates, Inc. | |
| 489 | 6131 Greenback Lane<br>Citrus Heights, CA 95621 | Kobra Associates, Inc. | |
| 507 | 3025 East Shaw Avenue<br>Fresno, CA 93710 | Central Valley Food Services, Incorporated | |
| 509 | 3110 East Tulare<br>Fresno, CA 93702 | Central Valley Food Services, Incorporated | |
| 512 | 1200 E. Main Street<br>Woodland, CA 95776 | Kobra Associates, Inc. | |
| 513 | 6729 Skyway<br>Paradise, CA 95969 | Kobra Associates, Inc. | |
| 518 | 13751 Mono Way<br>Sonora, CA 95370 | Central Valley Food Services, Incorporated | |
| 519 | 1300 Jensen Ave<br>Sanger, CA 93657 | Central Valley Food Services, Incorporated | |
| 524 | 945 Wolftrap<br>Madera, CA 93637 | Central Valley Food Services, Incorporated | |
| 526 | 2195 W. Shaw<br>Fresno, CA 93711 | Central Valley Food Services, Incorporated | |
| 532 | 4849 Madison Avenue<br>Sacramento, CA 95841 | Kobra Associates, Inc. | |
| 535 | 2680 Grass Valley Highway<br>Auburn, CA 95603 | Kobra Associates, Inc. | |
| 538 | 6720 North Blackstone<br>Fresno, CA 93710 | Central Valley Food Services, Incorporated | |
| 546 | 1111 Colusa Avenue<br>Yuba City, CA 95991 | Kobra Associates, Inc. | |
| 548 | 2293 Arden Way<br>Sacramento, CA 95825 | Kobra Associates, Inc. | |
| 549 | 2542 The Esplanade<br>Chico, CA 95973 | Kobra Associates, Inc. | |

16

| Store Number | Address | Owner | Price |
|---|---|---|---|
| 570 | 1923 Douglas Boulevard<br>Roseville, CA 95661 | Food Services Management, Incorporated | |
| 580 | 1270 V Street<br>Merced, CA 95340 | Central Valley Food Services, Incorporated | |
| 582 | 4968 East Kings Canyon<br>Fresno, CA 93727 | Central Valley Food Services, Incorporated | |
| 583 | 11801 Nevada City Highway<br>Grass Valley, CA 95945 | Food Services Management, Incorporated | |
| 585 | 4410 Rocklin Road<br>Rocklin, CA 95677 | Food Services Management, Incorporated | |
| 587 | 1130 Leisure Town Rd.<br>Vacaville, CA 95677 | Kobra Associates, Inc. | |
| 589 | 1898 Bellvue Road<br>Atwater, CA 95301 | Central Valley Food Services, Incorporated | |
| 593 | 2560 W. El Camino Avenue<br>Sacramento, CA 95833 | Kobra Associates, Inc. | |
| 594 | 7795 Stockton Boulevard<br>Sacramento, CA 95823 | Kobra Associates, Inc. | |
| 3222 | 1132 Clovis Avenue<br>Clovis, CA 93612 | Sierra Valley Restaurants, Inc. | |
| 3294 | 3085 E. Central Avenue<br>Fresno, CA 93725 | Sierra Valley Restaurants, Inc. | |
| 3295 | 8008 N. Cedar Avenue<br>Fresno, CA 93720 | Sierra Valley Restaurants, Inc. | |
| 3367 | 4085 N. Golden State Boulevard<br>Fresno, CA 93722 | Central Valley Food Services, Incorporated | |
| 3398 | 1167 N. Clovis<br>Fresno, CA 93727 | Central Valley Food Services, Incorporated | |
| 3399 | 18158 Avenue 24<br>Chowchilla, CA 93610 | Central Valley Food Services, Incorporated | |
| 3401 | 3040 Sunrise Boulevard<br>Rancho Cordova, CA 95742 | Food Services Management, Incorporated | |
| 3403 | 1075 South Main Street<br>Red Bluff, CA 96080 | Food Services Management, Incorporated | |
| 3406 | 1045 Dana Drive<br>Redding, CA 96003 | Food Services Management, Incorporated | |
| 3426 | 8655 Auburn Boulevard<br>Roseville, CA 95661 | Food Services Management, Incorporated | |
| 3435 | 6691 Stanford Ranch Road<br>Rocklin, CA 95677 | Food Services Management, Incorporated | |
| 3436 | 9179 Elk Grove Florin Road<br>Elk Grove, CA 95624 | Food Services Management, Incorporated | |
| 3438 | 4820 Laguna Boulevard<br>Elk Grove, CA 95758 | Food Services Management, Incorporated | |
| 3454 | 150 Dorset Drive<br>Dixon, CA 96520 | Kobra Associates, Inc. | |
| 3457 | 2010 East Main Street<br>Woodland, CA 95776 | Kobra Associates, Inc. | |

17

| Store Number | Address | Owner | Price |
|---|---|---|---|
| 3465 | 3970 County Road 89<br>Dunnigan, CA 95967 | Kobra Associates, Inc. | |
| 3475 | 220 Nut Tree Parkway<br>Vacaville, CA 95687 | Kobra Associates, Inc. | |
| 3486 | 4085 Railroad Avenue<br>Redding, CA 96001 | Kobra Associates, Inc. | |
| 3489 | 3098 Highway 99 W<br>Corning, CA 96021 | Kobra Associates, Inc. | |
| 3530 | 3058 W. Clinton Avenue<br>Fresno, CA 93722 | Sierra Valley Restaurants, Inc. | |
| 3541 | 28692 Ave 12<br>Madera, CA 93637 | Central Valley Food Services,<br>Incorporated | |
| 3567 | 1680 Herndon Avenue<br>Clovis, CA 93611 | Central Valley Food Services,<br>Incorporated | |
| 4311 | 500 Natoma Station Drive<br>Folsom, CA 95630 | Kobra Associates, Inc. | |
| 4313 | 455 Hwy 65<br>Lincoln, CA 95648 | Kobra Associates, Inc. | |
| 4316 | 8530 Auburn Folsom Road<br>Granite Bay, CA 95746 | Kobra Associates, Inc. | |
| 4317 | 1620 Broadway<br>Eureka, CA 95501 | Kobra Associates, Inc. | |
| 4323 | 7807 Sunrise Boulevard<br>Citrus Heights, CA 95610 | Food Services Management,<br>Incorporated | |
| 4327 | 1233 6th Street<br>Crescent City, CA 95531 | Kobra Associates, Inc. | |
| 4329 | 4435 Florin Road<br>Sacramento, CA 95823 | Kobra Associates, Inc. | |
| 4330 | 4300 Madison<br>Sacramento, CA 95842 | Kobra Associates, Inc. | |
| 4336 | 11222 Old Mill Lane<br>Martell, CA 95654 | Kobra Associates, Inc. | |
| 4350 | 1955 20th Street<br>Chico, CA 95928 | Kobra Associates, Inc. | |
| 4351 | 400 Joseph Gallo Court<br>Livingston, CA 95334 | Sierra Valley Restaurants, Inc. | |
| 4359 | 1030 Tharp Road<br>Yuba City, CA 95993 | Kobra Associates, Inc. | |
| 4361 | 800 E. Cypress Avenue<br>Redding, CA 96002 | Food Services Management,<br>Incorporated | |
| 4367 | 10390 Twin Cities<br>Galt, CA 95632 | Food Services Management,<br>Incorporated | |
| 4368 | 2010 Arby Way<br>Anderson, CA 96007 | Food Services Management,<br>Incorporated | |
| 4372 | 40070 Highway 49<br>Oakhurst, CA 93644 | Central Valley Food Services,<br>Incorporated | |
| 5379 | 6759 N. Milburn<br>Fresno, CA 93722 | Sierra Valley Restaurants, Inc. | |

18

# EXHIBIT B

## LEASES

| Store Number | Address | Landlord |
|---|---|---|
| 441 | 2124 North Blackstone Highway<br>Fresno, CA 93703 | JIB Corp |
| 446 | 500 Broadway<br>Chico, CA 95928 | JIB Corp |
| 465 | 595 W. Olive Avenue<br>Merced, CA 95348 | JIB Corp |
| 467 | 337 G Street<br>Davis, CA 95616 | JIB Corp |
| 471 | 13421 East Lincoln Way<br>Auburn, CA 95603 | JIB Corp |
| 475 | East Monte Vista Avenue<br>Vacaville, CA 95688 | JIB Corp |
| 489 | 6131 Greenback Lane<br>Citrus Heights, CA 95621 | JIB Corp |
| 507 | 3025 East Shaw Avenue<br>Fresno, CA 93710 | JIB Corp |
| 509 | 3110 East Tulare<br>Fresno, CA 93702 | JIB Corp |
| 512 | 1200 E. Main Street<br>Woodland, CA 95776 | JIB Corp |
| 513 | 6729 Skyway<br>Paradise, CA 95969 | JIB Corp |
| 518 | 13751 Mono Way<br>Sonora, CA 95370 | JIB Corp |
| 519 | 1300 Jensen Ave<br>Sanger, CA 93657 | JIB Corp |
| 524 | 945 Wolftrap<br>Madera, CA 93637 | JIB Corp |
| 526 | 2195 W. Shaw<br>Fresno, CA 93711 | JIB Corp |
| 532 | 4849 Madison Avenue<br>Sacramento, CA 95841 | JIB Corp |
| 535 | 2680 Grass Valley Highway<br>Auburn, CA 95603 | JIB Corp |
| 538 | 6720 North Blackstone<br>Fresno, CA 93710 | JIB Corp |
| 546 | 1111 Colusa Avenue<br>Yuba City, CA 95991 | JIB Corp |
| 548 | 2293 Arden Way<br>Sacramento, CA 95825 | JIB Corp |
| 549 | 2542 The Esplanade<br>Chico, CA 95973 | RSC Associates |
| 570 | 1923 Douglas Boulevard<br>Roseville, CA 95661 | Kobra Properties |

19

| Store Number | Address | Landlord |
|---|---|---|
| 580 | 1270 V Street<br>Merced, CA 95340 | JIB Corp |
| 582 | 4968 East Kings Canyon<br>Fresno, CA 93727 | Steven Investments |
| 583 | 11801 Nevada City Highway<br>Grass Valley, CA 95945 | Kobra Restaurant Properties, LLC |
| 585 | 4410 Rocklin Road<br>Rocklin, CA 95677 | ACV Skyline JIB, LLC  (est. 2/17/2010) |
| 587 | 1130 Leisure Town Rd.<br>Vacaville, CA 95677 | JIB Corp |
| 589 | 1898 Bellvue Road<br>Atwater, CA 95301 | 888 San Gabriel, LLC |
| 593 | 2560 W. El Camino Avenue<br>Sacramento, CA 95833 | JIB Corp |
| 594 | 7795 Stockton Boulevard<br>Sacramento, CA 95823 | JIB Corp |
| 3222 | 1132 Clovis Avenue<br>Clovis, CA 93612 | JIB Corp |
| 3294 | 3085 E. Central Avenue<br>Fresno, CA 93725 | JIB Corp |
| 3295 | 8008 N. Cedar Avenue<br>Fresno, CA 93720 | JIB Corp |
| 3367 | 4085 N. Golden State Boulevard<br>Fresno, CA 93722 | JIB Corp |
| 3398 | 1167 N. Clovis<br>Fresno, CA 93727 | JIB Corp |
| 3399 | 18158 Avenue 24<br>Chowchilla, CA 93610 | JIB Corp |
| 3401 | 3040 Sunrise Boulevard<br>Rancho Cordova, CA 95742 | Kobra Properties |
| 3403 | 1075 South Main Street<br>Red Bluff, CA 96080 | JIB Corp (est. 2/17/2010) |
| 3406 | 1045 Dana Drive<br>Redding, CA 96003 | Dana Center |
| 3426 | 8655 Auburn Boulevard<br>Roseville, CA 95661 | Kobra Restaurant Properties, LLC |
| 3435 | 6691 Stanford Ranch Road<br>Rocklin, CA 95677 | MidTown Niki Group (est. 2/17/2010) |
| 3436 | 9179 Elk Grove Florin Road<br>Elk Grove, CA 95624 | Kobra Restaurant Properties, LLC |
| 3438 | 4820 Laguna Boulevard<br>Elk Grove, CA 95758 | Kobra Restaurant Properties, LLC |
| 3454 | 150 Dorset Drive<br>Dixon, CA 96520 | JIB Corp |
| 3457 | 2010 East Main Street<br>Woodland, CA 95776 | JIB Corp |
| 3465 | 3970 County Road 89<br>Dunnigan, CA 95967 | JIB Corp |

| Store Number | Address | Landlord |
|---|---|---|
| 3475 | 220 Nut Tree Parkway<br>Vacaville, CA 95687 | JIB Corp |
| 3486 | 4085 Railroad Avenue<br>Redding, CA 96001 | JIB Corp |
| 3489 | 3098 Highway 99 W<br>Corning, CA 96021 | JIB Corp |
| 3530 | 3058 W. Clinton Avenue<br>Fresno, CA 93722 | JIB Corp |
| 3541 | 28692 Ave 12<br>Madera, CA 93637 | JIB Corp |
| 3567 | 1680 Herndon Avenue<br>Clovis, CA 93611 | JIB Corp |
| 4311 | 500 Natoma Station Drive<br>Folsom, CA 95630 | JIB Corp |
| 4313 | 455 Hwy 65<br>Lincoln, CA 95648 | JIB Corp |
| 4316 | 8530 Auburn Folsom Road<br>Granite Bay, CA 95746 | JIB Corp |
| 4317 | 1620 Broadway<br>Eureka, CA 95501 | JIB Corp |
| 4323 | 7807 Sunrise Boulevard<br>Citrus Heights, CA 95610 | Kobra Properties |
| 4327 | 1233 6th Street<br>Crescent City, CA 95531 | JIB Corp |
| 4329 | 4435 Florin Road<br>Sacramento, CA 95823 | JIB Corp |
| 4330 | 4300 Madison<br>Sacramento, CA 95842 | JIB Corp |
| 4336 | 11222 Old Mill Lane<br>Martell, CA 95654 | JIB Corp |
| 4350 | 1955 20th Street<br>Chico, CA 95928 | JIB Corp |
| 4351 | 400 Joseph Gallo Court<br>Livingston, CA 95334 | JIB Corp |
| 4359 | 1030 Tharp Road<br>Yuba City, CA 95993 | JIB Corp |
| 4361 | 800 E. Cypress Avenue<br>Redding, CA 96002 | Kobra Restaurant Properties, LLC |
| 4367 | 10390 Twin Cities<br>Galt, CA 95632 | JIB Corp (est. 2/17/2010) |
| 4368 | 2010 Arby Way<br>Anderson, CA 96007 | JIB Corp (est. 2/17/2010) |
| 4372 | 40070 Highway 49<br>Oakhurst, CA 93644 | Kobra Properties |
| 5379 | 6759 N. Milburn<br>Fresno, CA 93722 | Kobra Properties |

## EXHIBIT C

## FIXED ASSETS AND OTHER PERSONAL PROPERTY

SF:274237.1

# EXHIBIT D

## INVENTORY & CASH ON HAND

| Store Number | Address | Inventory Amount | Cash on Hand |
|---|---|---|---|
| 441 | 2124 North Blackstone Highway<br>Fresno, CA 93703 | | |
| 446 | 500 Broadway<br>Chico, CA 95928 | | |
| 465 | 595 W. Olive Avenue<br>Merced, CA 95348 | | |
| 467 | 337 G Street<br>Davis, CA 95616 | | |
| 471 | 13421 East Lincoln Way<br>Auburn, CA 95603 | | |
| 475 | East Monte Vista Avenue<br>Vacaville, CA 95688 | | |
| 489 | 6131 Greenback Lane<br>Citrus Heights, CA 95621 | | |
| 507 | 3025 East Shaw Avenue<br>Fresno, CA 93710 | | |
| 509 | 3110 East Tulare<br>Fresno, CA 93702 | | |
| 512 | 1200 E. Main Street<br>Woodland, CA 95776 | | |
| 513 | 6729 Skyway<br>Paradise, CA 95969 | | |
| 518 | 13751 Mono Way<br>Sonora, CA 95370 | | |
| 519 | 1300 Jensen Ave<br>Sanger, CA 93657 | | |
| 524 | 945 Wolftrap<br>Madera, CA 93637 | | |
| 526 | 2195 W. Shaw<br>Fresno, CA 93711 | | |
| 532 | 4849 Madison Avenue<br>Sacramento, CA 95841 | | |
| 535 | 2680 Grass Valley Highway<br>Auburn, CA 95603 | | |
| 538 | 6720 North Blackstone<br>Fresno, CA 93710 | | |
| 546 | 1111 Colusa Avenue<br>Yuba City, CA 95991 | | |
| 548 | 2293 Arden Way<br>Sacramento, CA 95825 | | |
| 549 | 2542 The Esplanade<br>Chico, CA 95973 | | |
| 570 | 1923 Douglas Boulevard<br>Roseville, CA 95661 | | |

23

| Store Number | Address | Inventory Amount | Cash on Hand |
|:---:|:---|:---:|:---:|
| 580 | 1270 V Street<br>Merced, CA 95340 | | |
| 582 | 4968 East Kings Canyon<br>Fresno, CA 93727 | | |
| 583 | 11801 Nevada City Highway<br>Grass Valley, CA 95945 | | |
| 585 | 4410 Rocklin RoadRocklin, CA<br>95677 | | |
| 587 | 1130 Leisure Town Rd.<br>Vacaville, CA 95677 | | |
| 589 | 1898 Bellvue Road<br>Atwater, CA 95301 | | |
| 593 | 2560 W. El Camino Avenue<br>Sacramento, CA 95833 | | |
| 594 | 7795 Stockton Boulevard<br>Sacramento, CA 95823 | | |
| 3222 | 1132 Clovis Avenue<br>Clovis, CA 93612 | | |
| 3294 | 3085 E. Central Avenue<br>Fresno, CA 93725 | | |
| 3295 | 8008 N. Cedar Avenue<br>Fresno, CA 93720 | | |
| 3367 | 4085 N. Golden State<br>Boulevard<br>Fresno, CA 93722 | | |
| 3398 | 1167 N. Clovis<br>Fresno, CA 93727 | | |
| 3399 | 18158 Avenue 24<br>Chowchilla, CA 93610 | | |
| 3401 | 3040 Sunrise Boulevard<br>Rancho Cordova, CA 95742 | | |
| 3403 | 1075 South Main Street<br>Red Bluff, CA 96080 | | |
| 3406 | 1045 Dana Drive<br>Redding, CA 96003 | | |
| 3426 | 8655 Auburn Boulevard<br>Roseville, CA 95661 | | |
| 3435 | 6691 Stanford Ranch Road<br>Rocklin, CA 95677 | | |
| 3436 | 9179 Elk Grove Florin Road<br>Elk Grove, CA 95624 | | |
| 3438 | 4820 Laguna Boulevard<br>Elk Grove, CA 95758 | | |
| 3454 | 150 Dorset Drive<br>Dixon, CA 96520 | | |
| 3457 | 2010 East Main Street<br>Woodland, CA 95776 | | |
| 3465 | 3970 County Road 89<br>Dunnigan, CA 95967 | | |

| Store Number | Address | Inventory Amount | Cash on Hand |
|---|---|---|---|
| 3475 | 220 Nut Tree Parkway<br>Vacaville, CA 95687 | | |
| 3486 | 4085 Railroad Avenue<br>Redding, CA 96001 | | |
| 3489 | 3098 Highway 99 W<br>Corning, CA 96021 | | |
| 3530 | 3058 W. Clinton Avenue<br>Fresno, CA 93722 | | |
| 3541 | 28692 Ave 12<br>Madera, CA 93637 | | |
| 3567 | 1680 Herndon AvenueClovis,<br>CA 93611 | | |
| 4311 | 500 Natoma Station Drive<br>Folsom, CA 95630 | | |
| 4313 | 455 Hwy 65<br>Lincoln, CA 95648 | | |
| 4316 | 8530 Auburn Folsom Road<br>Granite Bay, CA 95746 | | |
| 4317 | 1620 Broadway<br>Eureka, CA 95501 | | |
| 4323 | 7807 Sunrise Boulevard<br>Citrus Heights, CA 95610 | | |
| 4327 | 1233 6th Street<br>Crescent City, CA 95531 | | |
| 4329 | 4435 Florin Road<br>Sacramento, CA 95823 | | |
| 4330 | 4300 Madison<br>Sacramento, CA 95842 | | |
| 4336 | 11222 Old Mill Lane<br>Martell, CA 95654 | | |
| 4350 | 1955 20th Street<br>Chico, CA 95928 | | |
| 4351 | 400 Joseph Gallo Court<br>Livingston, CA 95334 | | |
| 4359 | 1030 Tharp Road<br>Yuba City, CA 95993 | | |
| 4361 | 800 E. Cypress Avenue<br>Redding, CA 96002 | | |
| 4367 | 10390 Twin Cities<br>Galt, CA 95632 | | |
| 4368 | 2010 Arby Way<br>Anderson, CA 96007 | | |
| 4372 | 40070 Highway 49<br>Oakhurst, CA 93644 | | |
| 5379 | 6759 N. Milburn<br>Fresno, CA 93722 | | |

SF:274237.1

## EXHIBIT E

## PERMITS

SF:274237.1

# EXHIBIT F-1

## ASSUMED CONTRACTS: FRANCHISE AGREEMENTS

| Store Number | Address | Expiration |
|:---:|---|:---:|
| 441 | 2124 North Blackstone Highway<br>Fresno, CA 93703 | February 14, 2011 |
| 446 | 500 Broadway<br>Chico, CA 95928 | November 29, 2024 |
| 465 | 595 W. Olive Avenue<br>Merced, CA 95348 | September 11, 2025 |
| 467 | 337 G Street<br>Davis, CA 95616 | May 18, 2023 |
| 471 | 13421 East Lincoln Way<br>Auburn, CA 95603 | May 18, 2010 |
| 475 | East Monte Vista Avenue<br>Vacaville, CA 95688 | August 25, 2025 |
| 489 | 6131 Greenback Lane<br>Citrus Heights, CA 95621 | December 30, 2023 |
| 507 | 3025 East Shaw Avenue<br>Fresno, CA 93710 | April 3, 2011 |
| 509 | 3110 East Tulare<br>Fresno, CA 93702 | February 14, 2011 |
| 512 | 1200 E. Main Street<br>Woodland, CA 95776 | August 27, 2026 |
| 513 | 6729 Skyway<br>Paradise, CA 95969 | January 30, 2019 |
| 518 | 13751 Mono Way<br>Sonora, CA 95370 | April 3, 2011 |
| 519 | 1300 Jensen Ave<br>Sanger, CA 93657 | April 3, 2011 |
| 524 | 945 Wolftrap<br>Madera, CA 93637 | April 3, 2011 |
| 526 | 2195 W. Shaw<br>Fresno, CA 93711 | August 18, 2011 |
| 532 | 4849 Madison Avenue<br>Sacramento, CA 95841 | December 30, 2013 |
| 535 | 2680 Grass Valley Highway<br>Auburn, CA 95603 | April 29, 2011 |
| 538 | 6720 North Blackstone<br>Fresno, CA 93710 | July 22, 2011 |
| 546 | 1111 Colusa Avenue<br>Yuba City, CA 95991 | March 8, 2018 |
| 548 | 2293 Arden Way<br>Sacramento, CA 95825 | June 7, 2012 |
| 549 | 2542 The Esplanade<br>Chico, CA 95973 | December 29, 2016 |
| 570 | 1923 Douglas Boulevard<br>Roseville, CA 95661 | April 12, 2012 |

27

| Store Number | Address | Expiration |
|---|---|---|
| 580 | 1270 V Street<br>Merced, CA 95340 | September 28, 2019 |
| 582 | 4968 East Kings Canyon<br>Fresno, CA 93727 | June 3, 2013 |
| 583 | 11801 Nevada City Highway<br>Grass Valley, CA 95945 | October 15, 2012 |
| 585 | 4410 Rocklin Road<br>Rocklin, CA 95677 | September 24, 2013 |
| 587 | 1130 Leisure Town Rd.<br>Vacaville, CA 95677 | August 27, 2026 |
| 589 | 1898 Bellvue Road<br>Atwater, CA 95301 | October 15, 2013 |
| 593 | 2560 W. El Camino Avenue<br>Sacramento, CA 95833 | September 11, 2025 |
| 594 | 7795 Stockton Boulevard<br>Sacramento, CA 95823 | September 18, 2021 |
| 3222 | 1132 Clovis Avenue<br>Clovis, CA 93612 | July 6, 2026 |
| 3294 | 3085 E. Central Avenue<br>Fresno, CA 93725 | July 6, 2026 |
| 3295 | 8008 N. Cedar Avenue<br>Fresno, CA 93720 | July 6, 2026 |
| 3367 | 4085 N. Golden State<br>Boulevard<br>Fresno, CA 93722 | September 11, 2025 |
| 3398 | 1167 N. Clovis<br>Fresno, CA 93727 | September 11, 2025 |
| 3399 | 18158 Avenue 24<br>Chowchilla, CA 93610 | November 30, 2019 |
| 3401 | 3040 Sunrise Boulevard<br>Rancho Cordova, CA 95742 | January 10, 2015 |
| 3403 | 1075 South Main Street<br>Red Bluff, CA 96080 | December 19, 2014 |
| 3406 | 1045 Dana Drive<br>Redding, CA 96003 | April 11, 2015 |
| 3426 | 8655 Auburn Boulevard<br>Roseville, CA 95661 | September 29, 2019 |
| 3435 | 6691 Stanford Ranch Road<br>Rocklin, CA 95677 | July 12, 2018 |
| 3436 | 9179 Elk Grove Florin Road<br>Elk Grove, CA 95624 | November 30, 2021 |
| 3438 | 4820 Laguna Boulevard<br>Elk Grove, CA 95758 | August 17, 2018 |
| 3454 | 150 Dorset Drive<br>Dixon, CA 96520 | August 27, 2026 |
| 3457 | 2010 East Main Street<br>Woodland, CA 95776 | August 27, 2026 |
| 3465 | 3970 County Road 89<br>Dunnigan, CA 95967 | May 18, 2023 |

| Store Number | Address | Expiration |
|---|---|---|
| 3475 | 220 Nut Tree Parkway<br>Vacaville, CA 95687 | August 27, 2026 |
| 3486 | 4085 Railroad Avenue<br>Redding, CA 96001 | May 18, 2023 |
| 3489 | 3098 Highway 99 W<br>Corning, CA 96021 | January 9, 2025 |
| 3530 | 3058 W. Clinton Avenue<br>Fresno, CA 93722 | July 6, 2026 |
| 3541 | 28692 Ave 12<br>Madera, CA 93637 | May 18, 2023 |
| 3567 | 1680 Herndon Avenue<br>Clovis, CA 93611 | September 11, 2025 |
| 4311 | 500 Natoma Station Drive<br>Folsom, CA 95630 | May 18, 2023 |
| 4313 | 455 Hwy 65<br>Lincoln, CA 95648 | May 18, 2023 |
| 4316 | 8530 Auburn Folsom Road<br>Granite Bay, CA 95746 | May 18, 2023 |
| 4317 | 1620 Broadway<br>Eureka, CA 95501 | September 11, 2025 |
| 4323 | 7807 Sunrise Boulevard<br>Citrus Heights, CA 95610 | June 19, 2021 |
| 4327 | 1233 6th Street<br>Crescent City, CA 95531 | September 11, 2025 |
| 4329 | 4435 Florin Road<br>Sacramento, CA 95823 | May 18, 2023 |
| 4330 | 4300 Madison<br>Sacramento, CA 95842 | August 27, 2026 |
| 4336 | 11222 Old Mill Lane<br>Martell, CA 95654 | August 27, 2026 |
| 4350 | 1955 20th Street<br>Chico, CA 95928 | January 9, 2025 |
| 4351 | 400 Joseph Gallo Court<br>Livingston, CA 95334 | July 6, 2026 |
| 4359 | 1030 Tharp Road<br>Yuba City, CA 95993 | September 11, 2025 |
| 4361 | 800 E. Cypress Avenue<br>Redding, CA 96002 | June 17, 2023 |
| 4367 | 10390 Twin Cities<br>Galt, CA 95632 | October 8, 2024 |
| 4368 | 2010 Arby Way<br>Anderson, CA 96007 | July 6, 2024 |
| 4372 | 40070 Highway 49<br>Oakhurst, CA 93644 | September 29, 2025 |
| 5379 | 6759 N. Milburn<br>Fresno, CA 93722 | February 21, 2027 |

# EXHIBIT F-2

## ASSUMED CONTRACTS:  OTHER AGREEMENTS

SF:274237.1

# EXHIBIT G

## EQUIPMENT LEASED PURSUANT TO NON-ASSIGNABLE AGREEMENTS

**EXHIBIT H**

**ASSUMED LIABILITIES**

# EXHIBIT I

## EXCLUDED STORE ASSETS

SF:274237.1

# EXHIBIT J

## FORM OF BILL OF SALE AND ASSIGNMENT

**THIS BILL OF SALE AND ASSIGNMENT** is made as of this ___th day of _____, 2010, by BEVERLY N. MCFARLAND, acting in her sole capacity as the Chapter 11 Trustee ("**Seller**") of Food Service Management, Inc., Kobra Associates, Inc., Sierra Valley Restaurants, Inc., and Central Valley Food Services, Inc., each a California corporation ("**Debtors**"), in favor of _____, a _____ ("**Buyer**").

## RECITALS

A.      Seller and Buyer have entered into that certain Asset Purchase Agreement, dated as of _____, 2010, (the "**Agreement**").

B.      The Agreement provides, among other things, that Seller shall convey and assign its interest in certain personal property to Buyer.  All capitalized terms used but not defined herein have the meanings given such terms in the Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller hereby bargains, sells, conveys, assigns and transfers to Buyer, all of Seller's right, title and interest in and to the Property, including (a) the Inventory, (b) the fixed assets and (c) the Leased Equipment.  The property transferred hereby does not include the Excluded Property, which shall remain the property of Seller.

The property transferred hereby is transferred "AS IS", "WHERE IS" and "WITH ALL FAULTS", and without any representation or warranty whatsoever, except as expressly provided in the Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Bill of Sale and Assignment as of the day and year first above written.

**SELLER:**

**DEBTORS**


By: _____
      Name:  Beverly N. McFarland
      Title:    Chapter 11 Trustee of the Debtors

# EXHIBIT K

## FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT

**THIS ASSIGNMENT AND ASSUMPTION AGREEMENT** (the "**Assignment**") is made as of _____, 2010 by and between BEVERLY N. MCFARLAND, acting in her sole capacity as the Chapter11 Trustee (in such capacity, the "**Assignor**"), for the bankruptcy estates of Food Service Management, Inc., Kobra Associates, Inc., Sierra Valley Restaurants, Inc., and Central Valley Food Services, Inc., each a California corporation (the "**Debtors**"), and**.** _____, a _____ ("**Assignee**").

WHEREAS, Assignor and Assignee have entered into that certain Asset Purchase Agreement, dated as of_____, (the "**Agreement**"); and

WHEREAS, the Agreement provides, among other things, that Assignor shall assign to Assignee certain contracts, rights, permits, licenses and other agreements, and Assignee shall assume all of the obligations of Assignor under such contracts, rights, permits, licenses and other agreements from and after the date of such assignment, and that Assignor and Assignee shall enter into this Assignment. All capitalized terms used but not defined herein have the meanings given such terms in the Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, the parties hereto hereby agree as follows:

1. <u>Assignment and Assumption of Agreements and Permits</u>. Assignor hereby assigns, sets over and transfers to Assignee all of its right, title and interest in, to and under the Assumed Contracts, the Permits and all other agreements, contracts rights, permits, licenses and the like which constitute Property and are not otherwise conveyed to Buyer under the Bill of Sale (collectively, the "**Assigned Agreements**"). Assignee hereby assumes the performance of all of the terms, covenants, obligations and conditions imposed upon Assignor under and with respect to the Assigned Agreements accruing or arising on or after the Closing.

2. <u>Indemnity by Assignee</u>. Assignee shall indemnify, defend and hold Assignor and its affiliates harmless from any and all losses, liabilities, damages, expenses or claims arising from any breach or default in the performance of any of Assignee's obligations under or related to the Assigned Agreements, or this Assignment on or after the Closing.

3. <u>Attorneys' Fees</u>. If either party hereto brings any action or suit against the other party hereto by reason of any breach of any covenant, condition, agreement or provision of this Assignment on the part of the other party, the prevailing party shall be entitled to recover from the other party all costs and expenses of the action or suit, including reasonable attorneys' fees, charges and costs, in addition to any other relief to which it may be entitled.

4. <u>Governing Law</u>. The parties agree that this Assignment and any disputes, controversies or claims arising hereunder or related to the transactions contemplated hereby shall be interpreted according to the laws of the State of California, excluding its choice of law rules that would apply any other law. If any matters in dispute are required to be settled by litigation, then

35

such trials will be decided by a judge. THE PARTIES WAIVE TRIAL BY JURY IN ANY SUCH ACTION(S) AND CONFIRM THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. Without limiting any party's right to appeal any order of the Bankruptcy Court, (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Assignment and to decide any claims or disputes which may arise or result from, or be connected with, this Assignment, any breach or default hereunder, or the transactions contemplated hereby, and (b) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 7.16 of the Agreement; provided, however, that if the Bankruptcy Case have closed, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the state or federal courts located in Sacramento County, California. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law.

5. <u>Successors and Assigns</u>. This Assignment shall apply to and bind the successors and assigns of the parties hereto.

6. <u>Captions</u>. The marginal headings or titles to the sections and paragraphs of this Assignment and the title of this instrument are not part of the Assignment but are inserted for convenience only and shall have no effect upon the construction or interpretation of any part of this Assignment.

7. <u>Amendments</u>. No provision of this Assignment may be amended, changed or waived except by a written instrument signed by Assignee and by Assignor (or, in the case of a waiver, by the party against whom enforcement of the waiver is sought).

8. <u>Further Acts</u>. Each party, upon the request of the other, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Assignment.

9. <u>Counterparts</u>. This Assignment may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute one and the same instrument.

**ASSIGNOR:**                                          **DEBTORS**


By: _____
      Name: Beverly N. McFarland
      Title:   Chapter 11 Trustee of Debtors

**ASSIGNEE:**     _____.,
                 a _____

                 By: _____
                        Name:
                        Title: